IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEITH SNYDER, SUSAN MANSANAREZ, and TRACEE A. BEECROFT, individually and on behalf of all others similarly situated,<br>　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>U.S. BANK N.A., WILMINGTON TRUST, N.A., and DEUTSCHE BANK NATIONAL TRUST COMPANY, individually and in their Capacities as Trustees,<br>　　　　　　　　　Defendants. | Case No. 1:16-cv-11675<br>(related to *Snyder v. Ocwen Loan Servicing LLC*, No. 1:14-cv-08461)<br><br>Hon. Judge Matthew F. Kennelly |

**PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENA**

Pursuant to Fed. R. Civ. P. 45, Plaintiffs Keith Snyder, Susan Mansanarez, and Tracee Beecroft respectfully move to compel Respondent Bank of America, National Association ("Bank of America") to produce documents in response to a third-party subpoena issued in this action,[1] and in support state as follows:

**I.　　INTRODUCTION**

This is a nationwide class action seeking redress for non-consensual, automated calls Defendants caused to be made to themselves and others, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. All of the calls at issue were made by Ocwen Loan Servicing, LLC ("Ocwen"), the servicer for certain mortgage-backed securitization trusts for which Defendants U.S. Bank N.A. ("U.S. Bank"), Wilmington Trust, N.A. ("Wilmington"), and Deutsche Bank National Trust Company ("Deutsche Bank") are alleged to have served as trustees. Compl. ¶¶ 97-118. Relevant to these proceedings, Plaintiff Snyder's loan was alleged to

---

[1]　　The following exhibits are attached hereto: (A) the Bank of America subpoena with return of service; and (B) Bank of America information from the FDIC.

have held within GreenPoint Mortgage Funding Trust 2005-HE2 ("GPMF 2005-HE2"), Compl. ¶ 104, a fact alleged based on information provided by Ocwen and previously confirmed through discovery with U.S. Bank.

After two years of litigation, in January 2019, U.S. Bank disclosed to Plaintiffs' counsel for the first time that it did not believe that Plaintiff Snyder's loan was held in GPMF 2005-HE2, and identified a *different* trust, GreenPoint Mortgage Funding Trust 2007-HE1 ("GPMF 2007-HE1"), in which it believed the loan may have been held—despite the fact that, to Plaintiffs' knowledge, Ocwen never serviced GPMF 2007-HE1.

Respondent Bank of America is the entity from whom Ocwen purportedly obtained Snyder's loan for servicing, by way of the former servicer, Real Time Resolutions, Inc. ("Real Time").[2] Thus, on January 30, 2019, Plaintiffs issued a subpoena to Bank of America, seeking documents sufficient to identify the trustee and other parties relevant to the Snyder loan, and associated materials. Ex. A. Although the subpoena was served on Bank of America on January 30, 2019—and required production by February 7, 2019 (later extended by agreement to February 15, 2019)—Plaintiffs have not received any materials in response. Ex. A.

Plaintiffs need to know who the trustee was for Snyder's loan in order to determine whether U.S. Bank is a proper defendant, and if not, to identify what additional party or parties need to be added to this action as a defendant based on its relation to the calling at issue. As such, Plaintiffs now request that the Court compel compliance with their subpoena.

## II. FACTS

Plaintiffs filed this action on December 28, 2016, seeking redress for nonconsensual, automated calls made to the cell phones of themselves and others by servicer Ocwen in relation

---

[2] In response to a subpoena in this action, Real Time informed Plaintiff's counsel that Bank of America was, at least at one point, the master servicer for the Snyder loan.

to mortgage-backed securitization trusts for which U.S. Bank, Deutsche, and Wilmington were trustees, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii).

The TCPA was enacted in response to widespread public outrage over the proliferation of intrusive, nuisance calling practices. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012). Congress found that the unique, personal nature and added cost of mobile phone use mandated strong consumer protections, specifically targeting the autodialed and prerecorded calls it considered to be a greater nuisance and privacy invasion than calls from "live" persons.[3] *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, at ¶ 124 (2015). Indeed, as the Supreme Court held in a different context: "The unwilling listener's interest in avoiding unwanted communication is an aspect of the broader 'right to be let alone' ... the most comprehensive of rights and the right most valued by civilized men." *Hill v. Colorado*, 530 U.S. 703, 716–17 (2000) (citation omitted).

The TCPA thus broadly prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A)(iii). Said another way, all autodialed calls to cell phones are illegal, unless the caller has consent of the called party. "The TCPA is essentially a strict liability statute[;] … [it] does not require any intent for liability except when awarding treble damages." *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011) (citation omitted).

Liability for a TCPA violation may be imputed to a party that did not itself place the

---

[3] *See* S. Rep. No. 102-178, 6, 1991 U.S.C.C.A.N. 1968, 1974 (1991) (identifying legislative goal of "ban[ning] all autodialed calls, and artificial or prerecorded calls, to ... cellular phones").

unlawful calls if the party that placed the calls did so as an agent of that party. Rather, to ensure that creditors and debt collectors call only those consumers who have consented to receive autodialed or prerecorded message calls, the creditor is responsible under the TCPA for demonstrating that the consumer provided prior express consent to be called—and can be held directly liable irrespective of agency. *In re Rules & Regs. Implementing the TCPA*, 23 FCC Rcd. 559, at ¶ 10 (2008); *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637, 642 (7th Cir. 2012) (suggesting that indemnity may be "automatic" under TCPA for violations made by third-party collectors on behalf of creditor); *accord Ossola v. Am. Exp. Co.*, No. 13-4836, 2015 WL 2330032, at *1 (N.D. Ill. Feb. 20, 2015). Alternatively, an entity may be held vicariously liable for violations of the TCPA "under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574, at ¶ 28 (2013).

Plaintiffs' theory in this action is that Defendants—the trustees for the loans on which Ocwen was servicing when it made automated calls in violation of the TCPA to the cell phones of Plaintiffs and others—are vicariously and strictly liable for such violations, as a result of their own actions and inactions as to such calling, as well as due to their status as trustees standing in the shoes of the creditors on whose behalf such violations were made. Compl. ¶¶ 1, 97-118. Plaintiffs each seek to represent a class of persons whom, like themselves, Ocwen called using its Aspect-brand autodialer in relation to a loan for which Defendants were serving as trustees. Compl. ¶ 119.

Plaintiffs' complaint alleges that U.S. Bank was the trustee for the trust Ocwen was servicing when it placed the illegal calls at issue to Plaintiff Snyder and other members of the

4

"U.S. Bank Class" he seeks to represent.[4] Compl. ¶ 104. Earlier in this action, U.S. Bank confirmed through discovery that (1) it acted as trustee for GPMF 2005-HE2, and (2) GPMF 2005-HE2 held Snyder's loan. However, in January 2019, U.S. Bank claimed it "discovered"[5] that Snyder's loan was purportedly never held in GPMF 2005-HE2, and that, instead, one of Snyder's loans was held in a different trust for which Ocwen supposedly never served as servicer, GPMF 2007-HE1. Now, U.S. Bank is asking Plaintiffs to dismiss it from this action, based on its asserted lack of relation to any trust associated with the calling at issue to Snyder and the class he seeks to represent.

Ocwen still asserts that Snyder's loan was held in GPMF 2005-HE2, for which U.S. Bank served as trustee. Ocwen has indicated to Plaintiffs that it received the information relating to Snyder's loan from the former servicer, Real Time. Real Time, in turn, has responded that Bank of America was at one point the master servicer associated with the Snyder loan, and that Bank of America was believed to have the loan file and other relevant historical materials pertaining to the Snyder loan. Thus, Respondent Bank of America appears to be in the best (or potentially only) position to know who the trustee for Snyder's loan was during the calling at issue, in what trust Snyder's loan was held, who the actual servicer or sub-servicer of the loan was, and other pertinent information about the provenance of Snyder's loan and the entities directly or indirectly behind the illegal calling at issue.

Plaintiffs served their subpoena attached as <u>Exhibit A</u> on Bank of America on January 30, 2019. Despite meeting and conferring with Bank of America—and representations that at least

---

[4] The U.S. Bank Class asserted in Plaintiffs' complaint is defined as "[a]ll persons whose cellular telephones Ocwen called using its Aspect dialer in relation to a loan for which U.S. Bank was serving as trustee." Compl. ¶ 119.

[5] This Court has issued an order for rule to show cause why U.S. Bank and its lawyers should not be sanctioned for failing to use reasonable diligence in identifying its purported lack of standing to Snyder's loan until two years after Plaintiffs filed suit. Dkt. 102.

some of the materials requested would be produced—Plaintiffs have not received any documents or other written response from Respondent. As such Plaintiffs respectfully ask that the Court enter an order requiring Bank of America to comply with their subpoena.

### III. LEGAL STANDARD

"Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). The scope of discovery is broad— parties may generally obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "'[T]he Federal Rules … strongly favor full discovery whenever possible[.]" *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1189 (11th Cir. 2013).

The Federal Rules authorize parties in civil actions to request from non-parties, by Rule 45 subpoena, "documents or tangible things" within the scope of discovery permitted by Rule 26(b). Fed. R. Civ. P. 34(c). If a non-party fails to produce documents in compliance with a subpoena, the district court for the district where compliance is required may enter an order compelling the non-party to testify or produce the subpoenaed documents. *See* Fed. R. Civ. P. 37(a)(1), 45(d)(2)(B)(i); *see also Golden v. Am. Pro Energy*, No. 16-891, 2018 WL 1426341, at *2 (C.D. Cal. Feb. 15, 2018) ("A non-party is subject to – and will be required to comply with – a valid, properly served Rule 45 subpoena."). "The court for the district where compliance is required … may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g).

### IV. ARGUMENT

Plaintiffs issued a valid subpoena to Bank of America seeking the production relating to

6

Plaintiff Snyder's loan at issue and the associated trustee, servicer, and other associated entities. Bank of America has no legitimate basis for failing to produce such materials—especially given the limited scope of Plaintiffs' requests. Thus, as further detailed herein, the Court should compel Bank of America to produce the responsive materials.

### A. Plaintiffs' Subpoena Is Valid.

In accordance with Rule 45(a)(2), Plaintiffs' subpoena was issued from the U.S. District Court for the Northern District of Illinois, where this action is pending. Exs. A. Bank of America was properly served via process server on January 31, 2019. Ex. A. Moreover, Bank of America, as a national banking association, may be properly served any place it has a branch, 12 U.S.C. § 36(f)(1)(A), and Bank of America has branches in this District.[6] Therefore, Plaintiffs' subpoena was valid, and this Court has jurisdiction.

### B. Bank of America Should Produce Documents Identifying Entities Applicable to Snyder's Loan, and Associated Documentation.

The main goal of Plaintiffs' subpoena is to understand what happened to Snyder's loan applicable to this action, as well as to identify the trustee, servicer, and other pertinent parties associated with it. This will allow Plaintiffs to (1) confirm U.S. Bank's assertion that it is not the trustee associated with Snyder's loan, and (2) identify the proper trustee and other pertinent parties that may be appropriately added as defendants based on their affiliation with the illegal, automated calls Snyder received. Plaintiffs' subpoena is thus limited to materials intended to provide such information, and requests that Bank of America produce the following:

> **Request No. 1.** Documents sufficient to identify any persons with any type of interest in any loan associated with Keith Snyder is or has been held, including any associated trustee(s), creditor(s), servicer(s), transferor(s), and transferee(s), and the dates of any transfer.
> For your reference, Plaintiff Snyder took out a HELOC loan in relation to

---

[6] *E.g.*, https://locators.bankofamerica.com/il/chicago/financial-centers-chicago-16330.html (identifying Bank of America branch a block away from the Court).

7

>his former property—3135 Lido Isle Court, Las Vegas, Nevada 89117—which we understand was ultimately designated Bank of America Loan No. [redacted].
>
>**Request No. 2.** All documents relating to Plaintiff Snyder's loan, including but not limited to any conveyance or transfer.
>
>**Request No. 3.** All documents that show what any person responsive to Request No. 1's interest in the loan was, as well as the dates such interest was effective.

Ex. A.

It is critical to this action that Plaintiffs understand the history of Snyder's loan. If some entity other than U.S. Bank was the trustee for the trust holding Snyder's loan when Ocwen made the illegal servicing calls at issue to his cell phone, then Plaintiffs expect to file a motion for leave to amend their complaint to replace U.S. Bank with that entity. Conversely, obtaining clarity as to Snyder's loan may very well disprove U.S. Bank's present assertion that it wasn't the trustee associated with such calls. But either way, Respondent Bank of America—as the master servicer from whom Real Time says it (and subsequently, Ocwen) received Snyder's loan for servicing—is in the best position to have pertinent information about the trust in which Snyder's loan was held, the associated trustee, and other relevant information about its associated servicing and trust history.

The three production requests in Plaintiffs' subpoena are narrowly tailored to Plaintiff Snyder's loan for which he alleges he received automated calls from Ocwen in this action. Compl. ¶¶ 26, 31-51, 104. Obviously, because Plaintiffs' claims assert that the trustee – currently alleged to be U.S. Bank – is liable for Ocwen's calls in relation to its own actions and inactions in relation to the loan, as well as based on its status as the trustee for the trust holding it, determining that correct entity involved is relevant to the parties' claims and defenses, and the extent to which U.S. Bank or some other entity is the proper defendant.

8

Given the inherent relevant of Plaintiffs' subpoena's production requests, and the absence of any identified material burden by Bank of America to simply produce what it has for Plaintiff Snyder, there is no valid reason for non-production. As such, Plaintiffs' motion to compel should be granted.

## V.   CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion and enter an order compelling Bank of America to produce the materials requested in their subpoena, along with granting such other and further relief the Court deems reasonable and just.

Respectfully submitted,

Dated: February 18, 2019

KEITH SNYDER, SUSAN MANSANAREZ, and TRACEE A. BEECROFT, individually and on behalf of all others similarly situated

By: */s/ Alexander H. Burke*

Alexander H. Burke
Email:  aburke@burkelawllc.com
Daniel J. Marovitch
Email:  dmarovitch@burkelawllc.com
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288

Beth E. Terrell (*pro hac vice*)
Email:  bterrell@terrellmarshall.com
Adrienne D. McEntee (*pro hac vice*)
Email:  amcentee@terrellmarshall.com
TERRELL MARSHALL LAW GROUP PLLC
936 N. 34th St., Suite 300
Seattle, WA 98103
Telephone: (206) 816-6603

Mark L. Heaney
Email: mark@heaneylaw.com
HEANEY LAW FIRM, LLC

601 Carlson Pkwy., Suite 1050
Minnetonka, MN 55305
Telephone: (952) 933-9655

Guillermo Cabrera
Email: gil@cabrerafirm.com
THE CABRERA FIRM, APC
600 W. Broadway, Suite 700
San Diego, CA 92101
Telephone: (619) 500-4880

Mark Ankcorn
Email: mark@ankcornlaw.com
ANKCORN LAW FIRM PLLC
1060 Woodcock Rd., Suite 128
Orlando, FL 32803
Telephone: (321) 422-2333

*Counsel for Plaintiffs*

## CERTIFICATION OF CONFERRAL

Pursuant to Fed. R. Civ. P. 37(a)(1) and L.R. 37.2, I hereby certify that Plaintiffs have in good faith attempted to confer with Bank of America in an effort to resolve the discovery disputes at issue in this motion without court action, but were unable to do so—including through calls with myself and Respondent's representative "Anna" (available at 602-523-2228) on or around 3:00 p.m. CT on February 5, 2019 and 2:35 p.m. CT on February 11, 2019, as well as with "Ashley" (via Respondent's main 213-580-0702 line after receiving no response from the prior representative) on or around 12:15 p.m. CT on February 13, 2019, in addition to other missed connections. I also called Bank of America on February 14, 2019, and called and faxed a letter to Bank of America in a final attempt to meet-and-confer on February 18, 2019, but received no response by the time of filing.

Dated: February 18, 2019         */s/ Daniel J. Marovitch*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on February 18, 2019, I caused the foregoing to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois using the CM/ECF system, which will send notification of such filing to all counsel of record. I further certify that, upon filing of this document, I am causing a true and correct copy of the foregoing to be faxed to Respondent's Legal Order Processing Department at (980) 233-7070, as well as sent out for service by overnight FedEx to its branch at 201 South State Street, Chicago, Illinois 60604, and by process server on Respondent at its headquarters, as follows:

Bank of America, National Association
100 N. Tryon St.
Charlotte, NC 28202

                                                          */s/ Alexander H. Burke*