# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KEITH SNYDER, SUSAN MANSANAREZ, and TRACEE A. BEECROFT, individually and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br> v.<br><br>U.S. BANK N.A., WILMINGTON TRUST, N.A., and DEUTSCHE BANK NATIONAL TRUST COMPANY, individually and in their capacities as trustees,<br><br>   Defendants. | Case No. 1:16-cv-11675<br><br>**JURY TRIAL DEMANDED**<br><br>**REASSIGNED AS RELATED TO:** |
| KEITH SNYDER, et al.,<br><br>   Plaintiffs,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC,<br><br>   Defendant. | Case No. 1:14-cv-08461<br><br>Honorable Matthew F. Kennelly |

### RESPONSE OF U.S. BANK, N.A. AND MORGAN, LEWIS & BOCKIUS LLP TO FEBRUARY 13, 2019, RULE TO SHOW CAUSE ORDER

I.  **PRELIMINARY STATEMENT**

Defendant U.S. Bank National Association ("U.S. Bank") and its counsel, Morgan, Lewis & Bockius LLP (together, "Respondents") regret that they did not determine until early January 2019 that Plaintiff Keith Snyder's loan (the "Snyder Loan") was never in the Greenpoint Mortgage Funding Trust 2005-HE2 Trust (the "Greenpoint 2005 Trust"), as reported by Ocwen on multiple occasions and pled by Plaintiffs.[1]  U.S. Bank accepts its share of the responsibility for the circumstances leading to the Court's February 13, 2019 Order to Show Cause (the "Order").  Respectfully, however, the Court should not impose Rule 11 sanctions, among other reasons, because no statement in U.S. Bank's Answer is false and, moreover, Respondents acted in good faith after an inquiry reasonable under the circumstances.

Until January 2019, U.S. Bank reasonably—but incorrectly—believed that the Snyder Loan *at one point* had been in the Greenpoint 2005 Trust, based on a reasonably diligent search of its files.[2]  A U.S. Bank Vice President located two different documents from the files of two different U.S. Bank departments, reflecting that the Snyder Loan had previously been in the Greenpoint 2005 Trust.  The source of those documents was Ocwen, the day-to-day mortgage loan servicer for the Greenpoint 2005 Trust; Ocwen also happened to be the source of Plaintiffs' belief that the loan was in the Greenpoint 2005 Trust.  Regrettably, U.S. Bank has concluded that the information provided by Ocwen was wrong.

U.S. Bank's reliance on the data provided by Ocwen was appropriate and reasonable, and should not result in sanctions.  As the trustee for the Greenpoint 2005 Trust, U.S. Bank regularly

---

[1] Respondents do not believe that Plaintiffs bear any responsibility for the error.  Like U.S. Bank, Plaintiffs received information from Ocwen on which they were entitled to, and reasonably did, rely.

[2] Although not specifically raised by the Court, Respondents acknowledge that mistaken belief was reflected in U.S. Bank's discovery responses, which are being amended.

1

receives data from Ocwen, and, as explained *infra*, is expected and contractually entitled to rely on that data. Under the documents creating and governing the Greenpoint 2005 Trust (the "Pooling and Servicing Agreement" or "PSA"), the sponsor of the securitization (not U.S. Bank) hired, and allocated specific independent roles to different service providers based on their specialized expertise and experience. *See generally* Ex. 2 (Greenpoint 2005 Trust PSA). Ocwen, as servicer, performs loan-level work for the Greenpoint 2005 Trust and is solely responsible for collecting mortgage loan payments and interacting with borrowers. *See id*. at Art. 3. In contrast, U.S. Bank, as trustee, operates at the trust level and is not responsible for loan-level functions. *See id*. at Art. IX. To the limited extent that U.S. Bank needs loan-level data concerning the trust, the PSA makes clear that Ocwen is required to provide that data to the Trustee, that the Trustee is not required or expected to verify it, and that the Trustee is privileged to rely on its truth and accuracy. *See id.* at §§ 9.01-9.02.

In January 2019, Respondents discovered additional information that demonstrated the information upon which U.S. Bank relied was incorrect. Of course, Respondents wish that they had discovered the discrepancy earlier. However, there is no basis to infer that they intended to mislead Plaintiffs or the Court. Certainly, Respondents had no incentive to suggest that U.S. Bank was a proper defendant in this case when it is not. U.S. Bank's prior understanding reflected its good-faith belief at the time that, at some point, the Snyder Loan was in the Greenpoint 2005 Trust, and as soon as Respondents discovered the issue, they informed Ocwen and Plaintiffs, and provided Plaintiffs with detailed information of the relevant known facts with supporting documents. Under the circumstances, sanctions are not warranted.

## II.     BACKGROUND

The following background demonstrates that U.S. Bank acted reasonably and that the error at issue in this Order was unintentional.

A.  Relevant Pre-Litigation Events

U.S. Bank is the trustee for the Greenpoint 2005 Trust, which closed on or about April 29, 2005.  Greenpoint Mortgage Funding Inc. ("Greenpoint") was the original servicer, *see* Ex. 2, and Ocwen replaced Greenpoint as servicer in December 2013.  *See* Ex. 6 (Omnibus Consent to Transfer and Assignment of Servicing).  Separately, a trust known as Greenpoint Mortgage Funding Trust 2007-HE1 (the "Greenpoint 2007 Trust") closed on or about March 6, 2007.  *See* Ex. 3 (Sale and Servicing Agreement).  The Snyder Loan was originated in 2006 (Compl., ¶ 26) and, according to the loan schedule for the Greenpoint 2007 Trust, the Snyder Loan was conveyed to that trust at closing.  *See* Decl. of Eric Mest ("Mest Decl.") & Ex. 5 attached thereto.[3]

B.  Relevant Litigation Events

1.  The Underlying Ocwen Litigation

Plaintiffs sued Ocwen in October 2014 for alleged violations of the TCPA (the "Ocwen Litigation").  *See* Ocwen Litig., Case No. 14-cv-08461 (N.D. Ill. 2014), ECF No. 1.  On December 5, 2016, Ocwen responded to Plaintiffs' discovery requests, identifying U.S. Bank, as trustee for the Greenpoint 2005 Trust, as the investor in the Snyder Loan.  Based on Ocwen's responses, Plaintiffs reasonably understood that U.S. Bank is the trustee for the Greenpoint 2005 Trust – which was true – and reasonably believed that the Snyder Loan was in that trust – which was not true.

2.  This Lawsuit

The Complaint in this case was filed December 28, 2016.  ECF No. 1.  On June 26, 2017, U.S. Bank filed its Answer.  ECF No. 60.  As discussed below, the Answer acknowledged that

---

[3] This loan schedule and Ex. 4 have been redacted to remove loan numbers and information about all other loans to protect the privacy of borrowers.

3

U.S. Bank was the trustee of the Greenpoint 2005 Trust but denied allegations that the Snyder Loan was then-currently held in the Greenpoint 2005 Trust.[4]

On July 17, 2017, U.S. Bank served responses to Plaintiffs' Requests for Admission and Interrogatories. The discovery responses incorrectly stated that the Snyder Loan had been in the Greenpoint 2005 Trust and then was removed from the trust. The responses were verified by John Richards, a Vice President of U.S. Bank's Global Corporate Trust Services Group. *See* Decl. of John G. Richards II ("Richards Decl."), ¶¶ 1-2.

Mr. Richards personally gathered information from two separate sources to support the verification. First, Mr. Richards relied on information from U.S. Bank's RMBS Database. *See id.* at ¶¶ 2-5, 7. U.S. Bank is trustee for numerous trusts, and the loans in those trusts are serviced by many different servicers. U.S. Bank frequently receives litigation and other correspondence (concerning, for example, a foreclosure or property code violation) and, to enable U.S. Bank to forward that correspondence to the appropriate servicer for response, U.S. Bank maintains a database, referred to as the "RMBS Database," which stores data provided by servicers, including lists of loans and the associated servicer and trust to facilitate its coordination of inquiries tied to particular borrowers or properties. *See id.* at ¶ 3. Mr. Richards queried U.S. Bank's RMBS Database to see whether he could connect the Snyder Loan to any particular trust. *See id.* at ¶ 5. The RMBS Database reflected that on or around January 28, 2015, Ocwen had reported to U.S. Bank that the Snyder Loan was in the Greenpoint 2005 Trust. *See id.*

---

[4] A Senior Vice President and Chief Litigation Counsel for U.S. Bank and a Senior Vice President of U.S. Bank's Global Trust and Custody Services division worked on the Answer. U.S. Bank is not waiving its attorney-client privilege or work-product protections, so this memorandum does not address communications between Morgan Lewis and U.S. Bank relating to the Answer and discovery responses.

4

Second, Mr. Richards obtained from U.S. Bank's Investor Reporting Group an Excel file Ocwen had sent U.S. Bank. *See id.* at ¶¶ 6-7. The Investor Reporting Group is responsible for preparing monthly distribution reports for certain trusts, including the Greenpoint 2005 Trust (for which U.S. Bank is the trustee) and the Greenpoint 2007 Trust (for which U.S. Bank is securities administrator).[5] *See id*. As directed by the PSA (and discussed *infra*), U.S. Bank prepares those reports based solely on information that the servicer delivers to U.S. Bank on a monthly basis. The file reflected that the loan had been in the Greenpoint 2005 Trust and then was charged off. *See id.* at ¶ 6 & Ex. 4.

Thus, both sources checked by Mr. Richards were consistent with Plaintiffs' allegations that the Snyder Loan was associated with the Greenpoint 2005 Trust; having identified two sources of corroborating evidence, U.S. Bank did not conduct an additional review to rule out the possibility of other inconsistent information.

3. Settlement of the Ocwen Litigation, and Stay of the Trustee Litigation

Just eleven days after U.S. Bank served its discovery responses, Plaintiffs informed the Court that they and Ocwen had reached a settlement in principle in the Ocwen Litigation. Ocwen Litig., ECF Nos. 243, 244. Although U.S. Bank and the other trustees were not signatories to that settlement agreement, it is the trustees Defendants' contention that Ocwen would be required to indemnify the trustee Defendants for any potential liability in this case, and the proposed settlement agreement contemplated Plaintiffs releasing claims against the trustee Defendants, including U.S. Bank. The parties jointly moved the Court to stay this case pending the Court's consideration of the settlement and the stay was granted on August 14, 2017.

---

[5] At closing, LaSalle Bank N.A., (which was later acquired by Bank of America) was the Master Servicer and Securities Administrator of the Greenpoint 2007 Trust. *See* Ex. 3. In 2011, U.S. Bank became the successor Master Servicer and Securities Administrator of that trust. *See* Mest Decl., ¶ 4. It has never been the trustee for that trust.

5

This case remained stayed for more than one year. On September 28, 2018, the Court denied final approval of the settlement, and the parties in the Ocwen Litigation returned to mediation joined by the trustee Defendants. Ocwen Litig., ECF No. 334. Ultimately, Plaintiffs and Ocwen revised the terms of their settlement, eliminating a release of the trustee Defendants. On November 14, 2018, the stay in this case was lifted. ECF No. 84.

### 4. U.S. Bank's Discovery that Ocwen's Information Was Incorrect

In early January 2019, in response to an unrelated inquiry from another party concerning the Greenpoint 2005 Trust, U.S. Bank located mortgage loan schedules for the Greenpoint 2005 Trust and provided the schedules to Morgan Lewis.[6] *See* Decl. of Michael Kraut ("Kraut Decl."), ¶ 4. The Snyder Loan did not appear on the schedules. *Id.* Respondents promptly began investigating the identified inconsistency further. *See id.* at ¶¶ 6-9. On January 8, 2019, U.S. Bank located and provided to Morgan Lewis the mortgage loan schedule for the Greenpoint 2007 Trust, which reflected the Snyder Loan. *See id.* at ¶ 5; *see also* Mest Decl., ¶ 6 & Ex. 5. U.S. Bank is not the trustee but is instead the Master Servicer for the 2007 trust. *See* Mest Decl., ¶ 4. On January 9, 2019, Morgan Lewis contacted counsel for Ocwen; when counsel spoke on January 10, 2019, Ocwen requested that U.S. Bank afford it a few days to research the issue. *See* Kraut Decl., ¶ 6. On January 11, 2019, Morgan Lewis informed Ocwen's counsel that U.S. Bank was eager to raise this issue with Plaintiffs, and that U.S. Bank would give Ocwen one more business day to research but intended to call Plaintiffs' counsel to raise this issue no later than Monday, January 14th. *See id.*

---

[6] In hindsight, U.S. Bank regrets it did not also review the available schedules earlier, in addition to the two other sources U.S. Bank did consult, but it did not seem necessary at the time. U.S. Bank's validation of its responses against two different documents obtained from two different departments does not warrant sanctions. *See Philos Techs.*, *Inc. v. Philos & D*, *Inc.*, 802 F.3d 905, 917 (7th Cir. 2015) (vacating sanctions order where party "had enough support for its contentions . . . to avoid Rule 11 sanctions").

On January 14, 2019, Ocwen's counsel informed Morgan Lewis that information in its files, which Ocwen obtained from a prior servicer, reflects that the Snyder Loan was in the Greenpoint 2005 Trust. *See* Kraut Decl., ¶ 7. Morgan Lewis immediately contacted counsel for Plaintiffs and informed Plaintiffs' counsel that U.S. Bank had reason to believe that it was not a proper defendant in this case and that U.S. Bank would elaborate further that same week after U.S. Bank further investigated the discrepancies.[7] *See id.* at ¶¶ 7-8. On Friday January 18, 2019, counsel for U.S. Bank sent a detailed letter, followed with five exhibits that provided support for U.S. Bank's analysis and conclusion. *See id.* at ¶ 9 & Ex. 1.

### III.    ARGUMENT

"Rule 11 sanctions are only to be granted sparingly, and should not be imposed lightly." *Lefkovitz v. Wagner*, 219 F.R.D. 592, 592-93 (N.D. Ill. 2004), *aff'd*, 395 F.3d 773 (7th Cir. 2005) (citing *Hartmarx Corp. v. Abboud*, 326 F.3d 862, 867 (7th Cir. 2003); *Zralka v. Tures*, 708 F. Supp. 948, 951 (N.D. Ill. 1989)); *see also Hartmarx Corp.*, 326 F.3d at 867 ("In exercising its discretion, a district court must also bear in mind that such sanctions are to be imposed sparingly, as they can 'have significant impact beyond the merits of the individual case' and can affect the reputation and creativity of counsel.") (quoting *Pac. Dunlop Holdings*, *Inc. v. Barosh*, 22 F.3d 113, 118 (7th Cir. 1994)).

In limited circumstances, a court may *sua sponte* "order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3). Rule 11(b) provides, in relevant part:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented

---

[7] This case was stayed for 15 of the 18 months between when U.S. Bank served its discovery responses and when it informed Plaintiffs of the discrepancy, providing an understandable reason why the discrepancy was not discovered earlier.

7

party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on evidence, or if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ P. 11(b)(1)-(4). For reasons explained below, sanctions are not warranted.

> A. Sanctions Are Not Warranted Because Respondents Did Not Make Any False Statements in the Answer

The Court should not impose Rule 11 sanctions because neither Respondent made any false statement in U.S. Bank's Answer. U.S. Bank admitted in its Answer that it acts as trustee for the Greenpoint 2005 Trust. Answer at n.1 & ¶¶ 1, 32, 101, 104-105, 116-118. That is true. And in response to Plaintiffs' allegations that the Greenpoint 2005 Trust "holds" Plaintiff Snyder's promissory note and that U.S. Bank acts as trustee for the Greenpoint 2005 Trust "including as to Plaintiff Snyder's HELOC loan," U.S. Bank **denied that the Snyder loan *is* in the 2005 Trust**. Compl., ¶¶ 32, 104, 105; Answer, ¶¶ 32, 104-105. These statements were true when the Answer was filed and remain true today, and therefore sanctions are not warranted.

While, at the time, U.S. Bank reasonably believed that the Snyder Loan *once had been* in the Greenpoint 2005 Trust, the allegation was properly denied because the Snyder Loan previously had been charged off; accordingly, Plaintiff's allegations – framed in the present tense – that the Snyder Loan *is* in the Greenpoint 2005 Trust were inaccurate. Because U.S. Bank's Answer was correct, sanctions are not warranted. *See generally Fiala v. B & B Enters.*, 738 F.3d

8

847, 852 (7th Cir. 2013) ("A complaint might be filed with no pre-complaint investigation whatsoever; but if the purpose was not improper and all the alleged facts turned out to be true and the [party] prevailed in the suit, there would be no basis for imposing [Rule 11] sanctions.").

    B.    <u>U.S. Bank's Inquiry Before Providing Discovery Responses Was Diligent, and Its Reliance on Servicer-Provided Data Was Reasonable</u>

While the Court did not raise the prospect of a discovery sanction, Respondents believe it appropriate to provide the Court information concerning U.S. Bank's discovery responses. Respondents provide this analysis even though Rule 11 "does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37." Fed. R. Civ. P. 11(d). As demonstrated above, before responding to Plaintiffs' discovery requests, U.S. Bank made a diligent inquiry, the results of which appeared to confirm that the loan was associated with the Greenpoint 2005 Trust, as alleged in the Complaint. *See* Richards Decl., at ¶¶ 2-7; *see also* Mest Decl. A U.S. Bank Vice President reviewed both an internal U.S. Bank database and a document from U.S. Bank's Investor Reporting Group, which both contained data that U.S. Bank had received from the servicer for the Greenpoint 2005 Trust. In order to understand why it was reasonable for U.S. Bank to rely on a servicer to provide loan-level information, it is critical to understand the roles each of them plays in connection with RMBS trusts.

    a.    <u>Role of the Trustee</u>

The trustee of an RMBS trust does not function as a traditional trustee (with the concomitant fiduciary duties and obligations), but as an "indenture trustee."[8] As an indenture

---

[8] *Peak Partners, L.P. v. Republic Bank*, 191 F. App'x 118, 122 (3d Cir. 2006) (describing indenture trustee as a "different legal animal" from an ordinary trustee); *see also AG Capital Funding Partners, L.P. v. State Street Bank & Tr. Co.*, 11 N.Y.3d 146, 156, 896 N.E.2d 61, 866 N.Y.S.2d 578 (2008) (indenture trustee's status "is more that of a stakeholder than one of a trustee") (quotations and citation omitted).

trustee, the RMBS trustee's duties under New York law[9] "are 'strictly defined and limited to the terms of the indenture.' An indenture trustee undertakes no obligations other than those explicitly set forth in the agreements."[10] The governing agreement – the PSA – expressly acknowledges and incorporates the principle of law that indenture trustees' duties are limited to those expressly set forth in the PSA and none can be implied against the Trustee.[11]

U.S. Bank's duties as trustee of the Greenpoint 2005 Trust are limited and ministerial. U.S. Bank did not originate the loans in the trust, select those loans for inclusion in the trust, perform due diligence on them (or have any duty to do so), service the loans, or act as custodian for the loan-level mortgage loan file documents. U.S. Bank's duties as trustee for the Greenpoint 2005 Trust include: (i) nominally holding legal title to the trust fund, including the mortgage loans, for the benefit of certificate holders in the trust;[12] (ii) calculating monthly payments to each class of certificate holders from servicer reported collections deposited by the servicer into a trust account;[13] (iii) preparing monthly distribution reports to certificate holders based on a format identified in the PSA and including the results of calculations and aggregated summary

---

[9] New York law governs the Greenpoint 2005 Trust pursuant to a choice-of-law provision in the PSA. Ex. 2, § 11.03.

[10] *Blackrock Core Bond Portfolio v. U.S. Bank Nat'l Ass'n*, 165 F. Supp. 3d 80, 91 (S.D.N.Y. 2016) (quoting *Elliott Assocs. v. J. Henry Schroder Bank & Tr. Co.*, 838 F.2d 66, 71 (2d Cir. 1988)); *see also Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 816 (2d Cir. 1985) ("Unlike the ordinary trustee, who has historic common-law duties imposed beyond those in the trust agreement, an indenture trustee is more like a stakeholder whose duties and obligations are exclusively defined by the terms of the indenture agreement."); *Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Ass'n*, 109 F. Supp. 3d 587, 597 (S.D.N.Y. 2015) (same); *Hildene Capital Mgmt., LLC v. Friedman, Billings, Ramsey Grp., Inc.*, No. 11 Civ. 5832 (AJN), 2012 WL 3542196, *12 (S.D.N.Y. Aug. 15, 2012) (same).

[11] Ex. 2, § 9.01.

[12] Ex. 2, § 2.01. The Trustee holds legal title to the loans not for its own personal benefit, but solely for the benefit of certificateholders of the trust. *Id.*

[13] Ex. 2, §§ 5.01, 5.02.

information derived from content received exclusively from the servicer;[14] and (iv) preparing tax filings on behalf of the trust.[15]

### b. Role of the Servicer

While an RMBS trustee is the face of the trust to certificateholders, the servicer is the face of the trust to borrowers. The PSA gives the servicer "full power and authority, acting alone . . . to do any and all things in connection with such servicing and administration which it may deem necessary or desirable. . . ."[16] As one leading treatise explains:

> [S]ervicers are responsible for enforcing the terms of a defaulted securitized loan. This responsibility may include: (1) foreclosing on the property and/or in a commercial context pursuing other related remedies such as exercising an assignment of leases and rents, appointing a receiver of rents, etc.; or (2) agreeing with the borrower to "work out" the loan default by modifying the terms of the loan or forbearing from exercising certain remedies in order to allow the borrower an opportunity to cure the underlying default.[17]

While loans are performing, the servicer is responsible for sending statements and correspondence, handling escrow and insurance payments, performing customer service, and collecting payments. When loans become delinquent, the servicer is responsible for notifying borrowers of their delinquencies; working with borrowers to cure defaults or modify loans;

---

[14] Ex. 2, § 5.03.

[15] Ex. 2, § 3.01.

[16] Ex. 2, § 3.15.

[17] Talcott J. Franklin & Thomas F. Nealon III, *Mortg. & Asset Backed Secs. Litig. Handbook*, § 5:112 (2d ed. 2018); *see also Tran v. Bank of New York*, No. 13 Civ. 580 (RPP), 2014 WL 1225575, *1 n.5 (S.D.N.Y. Mar. 24, 2014), *aff'd*, 529 F. App'x 24 (2d. Cir. 2015), *amended and superseded on other grounds*, 610 F. App'x 82 (2d Cir. 2015) ("Although Plaintiffs' claims are based on the premise that it is the Trustee Defendants that collect their mortgage loan payments and execute foreclosure proceedings, that premise is factually incorrect. The mortgage loan servicers will collect the debt service payments on the loans and distribute the same to investors and are responsible for . . . foreclosing on the property."); *see generally CWCapital Asset Mgmt., LLC v. Chicago Props., LLC*, 610 F.3d 497, 499-502 (7th Cir. 2010) (describing role of servicer).

instituting and prosecuting foreclosure actions; and then maintaining and repairing, as necessary, and selling foreclosed properties.[18]

    c. The PSA Expressly Provides for the Trustee to Rely on the Servicer to Provide Accurate Loan-Level Data and Exculpates the Trustee for Relying on Such Data

In light of these differing roles, it is reasonable for a trustee to look to the servicer for information as to which loans the servicer is servicing for a trust. In fact, because the Trustee has no other reliable way to collect up-to-date loan-level data, the PSA expressly requires the servicer to provide servicing-related data to the trustee and *in multiple places explicitly states that the trustee is expected and entitled to rely on its accuracy.*

In particular, the Greenpoint 2005 Trust PSA requires the servicer to deliver to the Trustee on a monthly basis a servicer report that contains all information about the loans in the trust so that the Trustee can prepare statements to certificateholders. Ex. 2, § 5.03. The PSA states that "[t]he Trustee shall not be responsible to recompute, recalculate or verify any information provided to it by the Servicer." *Id.* at § 5.04.[19] This servicer file is the document that Mr. Richards reviewed when seeking to confirm that the Snyder loan was in the Greenpoint 2005 Trust. *See* Richards Decl., ¶ 4 & Ex. 4.

Not only does the PSA expressly state that the Trustee shall rely on the servicer's loan-level data, the PSA explicitly exculpates the Trustee from liability for doing so: "the Trustee shall have no obligation to reconcile, recompute or recalculate any remittances or reports of the Servicer and the Custodian and the Trustee may fully rely upon and shall have no liability with

---

[18] Ex. 2, §§ 3.01, 3.06.

[19] Section 5.03 similarly provides that the Trustee's responsibility for disbursing information in the monthly distribution reports for certificateholders to review "is limited to the availability, timeliness and accuracy of the information derived from the Servicer."

12

respect to information provided by the Servicer and the Custodian." Ex. 2, § 9.01. The PSA further provides that the trustee is not bound to investigate the facts of any report or other document that it receives unless directed to do so by certificateholders with at least 25% of the voting rights of the trust. *Id.* at § 9.02(a)(v).

In light of the roles of the parties, it was reasonable for the Trustee to rely on the accuracy of servicer data when it responded to the discovery requests, particularly when the information corroborated the allegation in the Complaint.

C. Morgan Lewis Satisfied Its Duty of Reasonable Inquiry

Morgan Lewis worked with U.S. Bank in preparing the Answer and the discovery responses, and the documents were reviewed and approved by U.S. Bank. *See* Kraut Decl., ¶¶ 2-3.

Although the discovery responses regrettably contain an error, Morgan Lewis satisfied its duty of reasonable inquiry. Without revealing attorney-client communications and work product, Morgan Lewis conferred with Mr. Richards. Mr. Richards checked appropriate sources of available and relevant information, which appeared to confirm that the Snyder Loan had been in the Greenpoint 2005 Trust. *See* Richards Decl., ¶¶ 2-5, 7. Morgan Lewis did not have access to any information to the contrary. *See generally Iosello v. Orange Lake Country Club*, *Inc.*, Case No. 14 C 3051, 2015 WL 2330180, at *2 (N.D. Ill. May 14, 2015) ("Under these conditions, it was reasonable for Iosellos' counsel to rely on the factual contentions that their clients relayed to them.").

Moreover, in light of the allegations in the Complaint that the Snyder Loan was in the Greenpoint 2005 Trust, the fact that U.S. Bank data agreed with the allegations rendered Morgan Lewis's reliance on the accuracy of U.S. Bank's verification objectively reasonable under the circumstances. *See Hadges v. Yonkers Racing Corp.*, 48 F.3d 1329-1331 (2d Cir. 1995)

13

(attorney made a reasonable inquiry under the circumstances and Rule 11 sanctions not warranted where counsel relied on the sworn statements of his client and another attorney in similar litigation).

        D.      <u>Sanctions Are Not Warranted Because of Respondents' Good Faith</u>

Sanctions are not warranted because any error relevant to this Order was made unintentionally, in good faith, not for an improper purpose, and promptly was corrected upon detection. *See Milwaukee Concrete Studios*, *Ltd. v. Fjeld Mfg. Co.*, 8 F.3d 441, 449 (7th Cir. 1993) (although party's "factual error was admittedly a serious one, and one with which the district court was understandably perturbed, the error was inadvertent and therefore not sanctionable"); *see also Pennsylvania Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 188 F. Supp. 3d 776, 787-90 (N.D. Ill. 2016) (Kennelly, J.) (denying discovery sanctions where court not persuaded that party or counsel knowingly certified inaccurate or incomplete discovery responses).[20] Such an error is not the type of abusive litigation misconduct that warrants sanctions under Rule 11. *See Milwaukee Concrete Studios*, 8 F.3d at 451 ("Although it is true that deterrence is a central goal of Rule 11, that goal would not be furthered by the imposition of sanctions here. Inadvertent factual errors will occur—we hope not frequently, but litigants and attorneys will make mistakes . . . but Rule 11 is not directed to isolated factual errors") (citations omitted).[21] Any error or mistake does not rise to the level of intentional or bad faith misconduct warranting *sua sponte* sanctions under Rule 11. *See DH Holdings*, *LLC v. MeridianLink*, *Inc.*, No. 10 C 2351, 2010 WL 3385456, at *2 (N.D. Ill. Aug. 23, 2010) (Kennelly, J.) (sanctions not

---

[20] *Appeal dismissed per stipulation*, Nos. 16-2588 & 16-2845, 2017 WL 6501547 (7th Cir. Nov. 7, 2017).

[21] *See also N. Illinois Telecom*, *Inc. v. PNC Bank*, *N.A.*, 850 F.3d 880, 883-889 (7th Cir. 2017) (reversing sanctions order and discussing history and purpose of Rule 11).

justified where circumstances did not show "an improper purpose within the meaning of Rule 11"); *see also Harding Uni. v. Consulting Servs. Grp.*, *L.P.*, 48 F. Supp. 2d 765, 769 (N.D. Ill. 1999) (Rule 11 sanctions "will not be imposed unless a specific allegation is utterly void of support") (citations omitted).

Moreover, Respondents have fully and continually cooperated with Plaintiffs throughout this case, including with respect to the issues relevant to this Order, which further evidences their good faith. When U.S. Bank discovered the discrepancy in January 2019, Morgan Lewis attempted to resolve the discrepancy with Ocwen, promptly thereafter contacted counsel for Plaintiffs to explain the situation, and voluntarily wrote a detailed letter with exhibits to Plaintiffs setting forth the support for U.S. Bank's conclusion that the Snyder loan was not in the Greenpoint 2005 Trust. *See* Kraut Decl., ¶¶ 4-7. In addition, as directed by the Court, Morgan Lewis conferred with counsel for Plaintiffs to try to assist Plaintiffs in identifying the ownership history of the Snyder Loan after it left the Greenpoint 2007 Trust.[22] U.S. Bank remains committed to working cooperatively with Plaintiffs in this regard.

## IV. CONCLUSION

The mistakes that led to this Order—Ocwen's misidentification of the trust to Plaintiffs and to U.S. Bank, which was consistent with Plaintiffs' allegations, and the failure to discover the error earlier—are unfortunate. U.S. Bank accepts its share of the responsibility for the mistakes and apologizes to the Court. For all of the reasons set forth in this memorandum, however, sanctions are not warranted.

---

[22] While not directly relevant to the issues of the Order, U.S. Bank has cooperated extensively with Plaintiffs in other ways. Morgan Lewis voluntarily met with Plaintiffs' counsel for more than two hours in November 2018 to explain how RMBS transactions work, the roles of the parties, and to answer questions from Plaintiffs' counsel. *See* Kraut Decl., ¶ 10.

Dated: February 22, 2019

Respectfully submitted,

*/s/ Kenneth M. Kliebard*
Kenneth M. Kliebard
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Dr., Suite 500
Chicago, IL 60601
Telephone: 312.324.1000
kenneth.kliebard@morganlewis.com

Michael S. Kraut (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0600
Telephone: 212.309.6000
michael.kraut@morganlewis.com

*Counsel for U.S. Bank National Association and Deutsche Bank National Trust Company*