IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEITH SNYDER, SUSAN MANSANAREZ, and TRACEE A. BEECROFT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>U.S. BANK N.A., WILMINGTON TRUST, N.A., and DEUTSCHE BANK NATIONAL TRUST COMPANY, individually and in their capacities as trustees,<br><br>Defendants. | Case No. 16 C 11675 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The plaintiffs in this case filed suit against U.S. Bank N.A., Wilmington Trust, N.A., and Deutsche Bank National Trust Company on behalf of a putative class, alleging violations of the Telephone Consumer Protection Act (TCPA). Specifically, the plaintiffs allege that the defendant banks owned certain mortgage loans upon which a third-party servicer, Ocwen Loan Servicing, LLC, attempted to collect. In the course of those collection efforts, plaintiffs say, Ocwen and the defendants violated the TCPA by using automatic dialing technology to contact the named plaintiffs and the other members of the putative class. The defendants have moved for partial judgment on the pleadings under Federal Rule of Civil Procedure 12(c). For the reasons below, the Court denies the motion.

## Background

The following summary reflects the allegations in the plaintiffs' complaint, which the Court accepts as true for the purposes of this motion. See *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019).

In 2014 and 2016, the plaintiffs in this case filed two suits against Ocwen Loan Servicing, LLC, which the Court consolidated into a single proceeding. See *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461 (N.D. Ill.); *Beecroft v. Ocwen Loan Servicing, LLC*, No. 16 C 8677 (N.D. Ill.). They challenged Ocwen's alleged practice of making debt-collection calls using an automated telephone dialing system without the call recipients' prior consent. In late December 2016, after the Court denied their motion to add the banks as defendants in the *Ocwen* case, the plaintiffs filed this suit against U.S. Bank, Deutsche Bank, and Wilmington Trust. The plaintiffs allege that the illegal debt-collection calls were made on the banks' behalf, making them liable for the resulting violations. In early 2017, the Court found the cases related under Local Rule 40.4, resulting in the transfer of this case to the undersigned judge's docket.

The plaintiffs negotiated a settlement with Ocwen and sought the Court's approval. Initially, that settlement included the gratuitous dismissal of the claims against the bank defendants at issue here. The Court declined to approve the proposed settlement. See *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2018 WL 4659274, at *5-6 (N.D. Ill. Sept. 28, 2018). The plaintiffs then renegotiated the settlement and, among other things, eliminated the provisions that would have released the claims in the present case. The Court recently approved the plaintiffs' revised settlement with Ocwen. *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019

WL 2103379 (N.D. Ill. May 14, 2019).

The plaintiffs' allegations against the bank defendants are based on the same calls at the center of their suit against Ocwen. The named plaintiffs—Keith Snyder, Susan Mansanarez, and Tracee Beecroft—each received a home mortgage loan from one of the defendants or its predecessor in interest. Snyder's obtained a loan on her Nevada home from Greenpoint Mortgage Funding. The loan was later transferred to defendant U.S. Bank. Mansanarez obtained a loan on her Washington home from Citibank. That loan was later transferred to defendant Wilmington Trust. Beecroft obtained a loan on her Minnesota home from Deutsche Bank. All three plaintiffs defaulted on their loans, and all three homes were subject to foreclosure.

The plaintiffs allege that Ocwen subsequently sought to collect on the loans on behalf of the defendant banks. In the course of those efforts, Ocwen allegedly made numerous calls that violated the TCPA. The plaintiffs allege that the bank defendants exercise significant oversight and control over Ocwen's collection practices. For instance, Ocwen is allegedly required to submit regular reports to the banks about its collection efforts. Likewise, the plaintiffs allege that the banks have ratified Ocwen's actions by knowingly accepting the benefits of Ocwen's unlawful collection activities.

The banks have moved for partial judgment on the pleadings.

## Discussion

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate when there are no disputed issues of material fact and it is clear that the moving party . . . is entitled to judgment as a matter of law." *Unite Here*

*Local 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017). "To survive a motion for judgment on the pleadings (or a motion to dismiss), the complaint must 'state a claim to relief that is plausible on its face.'" *ADM Alliance Nutrition, Inc. v. SGA Pharm Lab, Inc.*, 877 F.3d 742, 746 (7th Cir. 2017). In assessing the motion, a reviewing court is "confined to the matters presented in the pleadings" and "must consider those pleadings in the light most favorable to" the nonmoving plaintiff. *Unite Here*, 862 F.3d at 595.

Although the defendants present their motion in terms of Article III standing, it centers on the capacity in which the defendants have been sued. Specifically, the plaintiffs have purported to sue the bank defendants in both their individual capacities and their capacities as the trustees of the trusts in which the plaintiffs' loans were held. The defendants have moved for partial judgment on the pleadings under Rule 12(c) on two grounds. First, the defendants contend that the plaintiffs have made insufficient allegations to support their claims against the banks in their individual capacities. In other words, the defendants seek dismissal of the claims against the banks in their individual capacities but do not contest the sufficiency of allegations against the defendants in their capacities as trustees. Second, the defendants contend that the plaintiffs cannot allege injuries traceable to the banks in their capacities as trustees of trusts *other than* the three trusts in which the named plaintiffs' loans were held.

As indicated, the defendants present both of these arguments in terms of standing under Article III of the Constitution. "The jurisdiction of federal courts is limited by Article III of the Constitution to 'Cases' and 'Controversies.'" *Freedom from Religion Found., Inc. v. Lew*, 773 F.3d 815, 819 (7th Cir. 2014) (quoting U.S. Const. art. III, § 2.). The Supreme Court has explained that "the irreducible constitutional minimum of

4

standing consists of three elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* At the pleading stage, the plaintiff "must clearly allege facts demonstrating" each element. *Id.* (internal quotation marks and alteration omitted). Here, the defendants have framed their arguments entirely in terms of traceability.

**A.     Allegations against bank defendants in their individual capacities**

The defendants first ask the Court to grant their motion for judgment on the pleadings to the extent that the plaintiffs seek to proceed against the banks in their individual capacities. They contend that plaintiffs have not alleged that the banks held any ownership interest in the named plaintiffs' loans or that Ocwen serviced the loans on behalf of the defendants in any capacity other than as trustees of the trusts that held those loans. The banks argue that "[i]t is well settled that trustees have separate identities when they are sued in their individual capacity versus their trustee capacity." Defs.' Br. in Supp. of Mot. J. on Pleadings, dkt. no. 87, at 8. The banks contend that, as a result, the plaintiffs do not and cannot allege injuries traceable to the banks in their individual capacities as required to establish Article III standing. The defendants also contend that the Court should look past the allegations in the complaint and consider the terms of the agreements pursuant to which the banks held the loans. They say that those agreements clearly limited the role of each bank to that of a trustee.

The plaintiffs respond that the TCPA's provisions for liability are sufficiently broad to reach the bank defendants in both their capacities as trustees and their individual

5

capacities. Citing decisions from the Federal Communications Commission and several courts, they contend that the defendants are "the closest analogue to a 'creditor' in these mortgage transactions" and thus "may be held directly liable under TCPA, even if the calls were placed by a third-party collector acting on its behalf." Pls.' Br. in Opp'n to Mot. J. on Pleadings, dkt. no. 100, at 5 (quoting *Ossola v. Am. Express Co.*, No. 13 C 4836, 2015 WL 2330032, at *1 (N.D. Ill. Feb. 20, 2015)). The plaintiffs then assert that their claims against the defendants are "twofold: [defendants] are liable not only in their capacities as trustees . . . but [also] in their individual capacities in relation to their own acts and omissions with response to" the allegedly illegal calls. *Id.* at 6. "As pleaded, this included causing, directing, and ultimately being responsible" for the calls. *Id.* And, according to the plaintiffs, the contracts pursuant to which the defendants managed the plaintiffs' loans are no obstacle to their standing to sue banks in their individual capacities because the defendants allegedly acted in ways that were beyond the scope of those agreements.

At least for some purposes, "[i]n the eyes of the law a person who sues or is sued in a representative capacity is distinct from that person in his individual capacity." *N. Tr. Co. v. Bunge Corp.*, 899 F.2d 591, 595 (7th Cir. 1990) (adjudicating a personal jurisdiction dispute). The modern trend has been toward recognizing a distinction between trustees in their personal capacities, on one hand, and their capacities as trustees, on the other. *Compare* Restatement (Second) of Trusts § 247 cmt. a (noting that a "trustee is personally liable to third persons for torts committed by him in the course of the administration of the trust"), *with* Restatement (Third) of Trusts § 105 (providing that "[a] third party may assert a claim against a trust for a liability incurred in

6

trust administration by proceeding against the trustee in the trustee's representative capacity").  But the defendants cite no authority that suggests that plaintiffs may not sue a trustee in its personal capacity or in both personal and trustee capacities.  In fact, the Restatement (Third) of Trusts addresses precisely that scenario in a comment, which states that the section cited above "does not preclude a third party from proceeding against a trustee in both the trustee's individual and representative capacities; in fact, this is frequently done."  Restatement (Third) of Trusts § 105 cmt. a.

The Court concludes that the plaintiffs have alleged sufficient facts to proceed against the defendants in both their capacities as trustees and as individual entities.  "[A]t this stage, [the plaintiffs] need only generally allege [their] agency claims so as to provide each defendant notice of the claims against them."  *Cunningham v. Foresters Fin. Servs., Inc.*, 300 F. Supp. 3d 1004, 1016 (N.D. Ind. 2018).  They need not allege specific "details regarding the relationships" between the defendants in their various capacities, in large part because the plaintiffs "could not reasonably be expected to know such information at this stage in the litigation."  *Id.*  Specifically, the plaintiffs have alleged—often without specifying the capacity in which the defendants acted—that the defendants directed and ratified Ocwen's allegedly unlawful calls.  Taking these allegations as true and construing them in the light most favorable to the plaintiffs, as the Court must at this stage, they suffice to survive the motion for judgment on the pleadings.

The nonbinding precedents cited by the defendants do not require a different outcome.  For instance, the court in *Mayo v. CMAC Mortgage, LLC*, No. 08-00568-CV-W-DGK, 2010 WL 9073441 (W.D. Mo. Mar. 1, 2010)—the case the defendants discuss

7

the most in their briefs—granted a bank defendant's motion to dismiss claims against it in its individual capacity. But it did so because, in the court's words, the plaintiffs' complaint was entirely "silent" regarding actions the defendant bank had taken in its individual capacity. *Id.* at *3. The court in *Mayo* did not purport to announce a broader holding about the requirements of pleading claims simultaneously against a bank in capacities as an individual entity and as a trustee. Without assessing whether *Mayo* was correctly decided, the Court notes that, construed in the light most favorable to them, the plaintiffs' complaint is not "silent" about the bank defendants' roles.

A Rule 12(c) motion may be granted only if the complaint fails to "state a claim to relief that is plausible on its face." *ADM Alliance Nutrition*, 877 F.3d at 746. This standard is not satisfied here, so the Court denies the motion. Of course, this does not mean that the plaintiffs will ultimately be able to marshal evidence sufficient to support their allegations. It simply means that they will have a chance to try.

**B.     Standing to sue banks as trustees of various trusts**

Next, the defendants ask the Court to grant their motion for judgment on the pleadings because the plaintiffs lack standing to sue the banks in their capacities as trustees of trusts other than those that actually held the three named plaintiffs' mortgages. Specifically, the banks contend that they are legally distinct in their representative capacities as trustees of each trust and that the named plaintiffs can trace injuries to the banks only in their capacities as trustees of the three trusts in which the named plaintiffs' mortgages were held. In short, they ask the Court to undergo a complete standing analysis before the class is certified and to limit the case to defendants against whom the named plaintiffs themselves inarguably have standing.

The plaintiffs oppose the motion, though their response misapprehends the defendants' argument. As noted above, in order to satisfy Article III's standing requirement, plaintiffs must allege (1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo*, 136 S. Ct. at 1547. Rather than confronting the defendants' contentions about the traceability requirement, the plaintiffs instead focus on the requirement of injury in fact. They argue that the defendants' "contention that their status as trustees for other trusts matters for standing purposes is a red herring" because the unifying injury in fact "is Ocwen's use of its Aspect dialer" on behalf of the banks. Pls.' Br. in Opp'n to Mot. J. on Pleadings, dkt. no. 100, at 9. But the defendants do not deny that the calls allegedly made to the plaintiffs satisfy the injury-in-fact requirement for standing; they argue instead that the injury is not traceable to the banks in their capacities as trustees of the other trusts.

Nevertheless, the defendants' argument is ultimately unavailing. Although the defendants are correct that the standing analysis in pre-certification class action suits is generally confined to the named plaintiffs, the Seventh Circuit has admonished that district courts must in some cases defer consideration of the standing question until after assessing class certification. *See Payton v. County of Kane*, 308 F.3d 673, 680-82 (7th Cir. 2002). Specifically, in putative class actions where multiple defendants are accused of violating class members' rights as part of a common scheme subject to common proof—sometimes called a "juridical link"—the Seventh Circuit has held that district courts must "consider issues of class certification prior to issues of standing." *Id.* In *Payton*, for instance, the named plaintiff sought to bring suit on behalf of a putative

9

class against nineteen Illinois counties, all of which had allegedly violated class members' rights by enforcing a single state statute. *Id.* at 675, 681. Acknowledging that the named plaintiff could allege an injury traceable only to one of the nineteen counties, the Seventh Circuit held that the district court should assess class certification before standing, and that, if certification was granted, standing should be analyzed in relation to the class as a whole. *Id.* at 680-81.

  The Court concludes that *Payton*'s rule applies to this putative class action. It is true that some courts have held that *Payton*'s requirement that class certification be assessed before standing only applies in cases where there is already a motion for class certification pending. *See, e.g.*, *Caitlin v. Hanser*, No. 1:10-cv-0451-LJM-DML, 2011 WL 1002736 (S.D. Ind. Mar. 17, 2011) ("[B]ecause no class certification motion is pending, the Court will not defer its consideration of Catlin's Article III standing . . . ."). But even if the Court adopted the reasoning from *Caitlin* and similar non-binding precedents, the *Payton* rule clearly has purchase here. Although there is no motion for class certification currently pending on this docket, the Court notes that in Snyder's earlier lawsuit against the banks' loan servicer, Ocwen, the Court conditionally certified a class with the same named plaintiffs as representatives for nearly identical claims based on the same allegedly illegal calls. *See Snyder v. Ocwen Loan Servicing, LLC*, 258 F. Supp. 3d 893 (N.D. Ill. 2017); Order Conditionally Certifying a Settlement Class, *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, dkt. no. 266 (N.D. Ill.). It would be incongruous to, as the defendants request, short circuit this related case on what amounts to a technicality.

  Instead, the Court opts to heed *Payton*'s admonition and defer consideration of

the defendant's standing argument until the Court has occasion to consider class certification. The parties should be prepared to argue this issue in tandem with class certification at an appropriate point in this litigation.

## Conclusion

For the foregoing reasons, the Court denies the defendants' motion for judgment on the pleadings [dkt. no. 86]. Prior to the June 5, 2019 status hearing, the parties should discuss and attempt to agree upon a revised discovery and pretrial schedule to propose to the Court.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 21, 2019