**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **KEITH SNYDER, SUSAN MANSANAREZ, and TRACEE A. BEECROFT, individually an on behalf of all others similarly situated,** | ) ) ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16 C 11675** |
| | ) | |
| **U.S. BANK N.A., WILMINGTON TRUST, N.A., and DEUTSCHE BANK NATIONAL TRUST COMPANY, individually and in their capacities as trustees,** | ) ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

MATTHEW F. KENNELLY, District Judge:

The named plaintiffs in this case filed suit against U.S. Bank N.A., Wilmington

Trust, N.A., and Deutsche Bank National Trust Company—collectively referred to as the

banks or the bank defendants—on behalf of a putative class, alleging violations of the

Telephone Consumer Protection Act (TCPA). Specifically, the plaintiffs allege that the

banks owned certain mortgage loans upon which a third-party servicer (whom the

plaintiffs also sued), Ocwen Loan Servicing, LLC, attempted to collect. In the course of

those collection efforts, Ocwen and the defendants allegedly violated the TCPA by

using automatic dialing technology to contact the named plaintiffs and the other

members of the putative class.

The plaintiffs recently reached a settlement in their suit with Ocwen on behalf of

nearly 1.7 million class members. *See Snyder v. Ocwen Loan Servicing, LLC (Ocwen*

*III*), No. 14 C 8461, 2019 WL 210339, at *1 (N.D. Ill. May 14, 2019). Soon after that settlement was approved, the bank defendants moved for summary judgment in this case on the grounds that (1) the *Ocwen* settlement extinguished the plaintiffs' vicarious liability claims against the banks; (2) the judgment entered in *Ocwen* has claim preclusive effect on the claims advanced in this suit; and (3) the plaintiffs have pointed to no evidence supporting direct liability. For the reasons stated below, the Court grants the motion on the claim of direct liability but otherwise denies it.

## Background

In 2014 and 2016, the named plaintiffs in this case filed two suits against Ocwen Loan Servicing, LLC, which the Court consolidated and to which the Court will refer collectively as the *Ocwen* case. *See Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461 (N.D. Ill.); *Beecroft v. Ocwen Loan Servicing, LLC*, No. 16 C 8677 (N.D. Ill.). They challenged Ocwen's alleged practice of making debt-collection calls using an automated telephone dialing system without the call recipients' prior consent.

In December 2016, the plaintiffs moved to amend their complaint to add the banks as defendants in the *Ocwen* suit. They argued in support of that motion that they had recently learned that Ocwen may be unable to fully compensate the putative class for its claims and that it was therefore necessary to include the banks to ensure compensation. The Court ultimately denied the plaintiffs' request to add the banks to the *Ocwen* suit. *See* Case No. 14 C 8461, Order of Dec. 21, 2016, dkt. no. 126. The plaintiffs then filed this suit. They allege that the illegal debt-collection calls they received from Ocwen were made on the banks' behalf, making them also liable for the resulting violations. The Court found the cases related under Local Rule 40.4, resulting in the transfer of this case to the undersigned judge's docket.

A. **Original *Ocwen* Settlement**

To understand the present motion, a bit more background on the *Ocwen* case is necessary. Several rounds of settlement negotiations occurred in the *Ocwen* case. A mediation in May 2016 with retired Judge James Holderman was unsuccessful. At a second mediation, this one facilitated by mediator Rodney Max in October 2016, Ocwen disclosed that its insurer had denied coverage for the claims asserted by the plaintiffs and suggested that it had a limited ability to finance the settlement on its own. These revelations led to the second mediation's unsuccessful termination.

In late June 2017, the Court provisionally granted, in the *Ocwen* suit, the plaintiffs' motion for certification of a limited class under Federal Rule of Civil Procedure 23(b)(2) and for a preliminary injunction to prevent Ocwen from continuing certain practices that allegedly violated the TCPA. *See Snyder v. Ocwen Loan Servicing, LLC* (*Ocwen I*), 258 F. Supp. 3d 893 (N.D. Ill. 2017). Before the Court's ruling on the motion for a preliminary injunction, the parties conducted extensive discovery, including exchanging information regarding calls made by Ocwen and on whose behalf those calls were made.

In July 2017, shortly after the Court granted the motion for a preliminary injunction, a third mediation was held with retired U.S. Magistrate Judge Morton Denlow. The banks, by now defending this parallel suit, participated in the negotiation. This resulted in an agreement to settle the claims of the putative class. The original settlement agreement provided for the establishment of a fund of $17,500,000. This would have been used to pay costs of notice and administration ($1,600,000), attorneys' fees ($5,289,250), incentive awards for the three named plaintiffs (collectively $75,000),

3

and, finally, payment of the claims of class members who submitted claim forms (the remaining $10,535,150).

The original settlement provided for dismissal of not only the *Snyder* and *Beecroft* suits against Ocwen, but also the present suit by the putative class against the banks. The banks offered no contribution to the settlement fund or any other consideration for the dismissal of the case against them.

The plaintiffs moved for final approval of the proposed settlement, for incentive awards for the named plaintiffs, and for payment of administrative fees and an award of attorneys' fees from the settlement proceeds. In September 2018, the Court denied the motion for final approval for three reasons, including—most importantly for present purposes—because it would have released the claims against the bank defendants for nothing. *See Snyder v. Ocwen Loan Servicing, LLC* (*Ocwen II*), No. 14 C 8461, 2018 WL 4659274, at *5-6 (N.D. Ill. Sept. 28, 2018).

## B.    Subsequent negotiations and amended settlement

Following the Court's denial of the motion to approve the final settlement agreement, the parties returned to mediation. A fourth mediation session—the second with retired Judge Denlow—resulted in an improved settlement for the class in the *Ocwen* case. The banks again participated in the mediation. The most significant changes in this amended settlement were that class counsel sought $500,000 less in attorney's fees; Ocwen offered $4,000,000 more in funds; and, critically, "the amended settlement also provide[d] for dismissal of only the *Snyder* and *Beecroft* suits against Ocwen and d[id] not seek to release the claims against the bank defendants." *Ocwen III*, 2019 WL 2103379, at *3. That is, the amended settlement expressly provided that

4

"the class is free to pursue claims against the bank defendants if it chooses." *Id.*

The Court ultimately approved the amended settlement. *See generally id.* at *4-11. In so doing, the Court noted—more than half a dozen times and in various ways— that one of the key considerations in this approval was that "the amended settlement no longer concerns the bank defendants." *Id.* at *5. Indeed, addressing the strength of the plaintiffs' case as required under *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 865 (7th Cir. 2014), the Court explained that:

> The parties have . . . addressed the Court's reservations regarding the bank defendants. . . . The original settlement agreement sought to release the claims against the banks for nothing and with no explanation. The amended settlement addresses this issue. *Specifically, the plaintiffs, Ocwen, and the banks agreed during the fourth mediation that the amended settlement would not release the claims against the banks.* In short, the banks have been carved out of the settlement, and the lawsuit against them is proceeding ahead. This change resolves the Court's concerns about the settlement's treatment of the bank defendants.

*Id.* at *7 (emphasis added). The Court placed special emphasis on the exclusion of the claims against the banks in its decision that no additional notice was necessary for class members. *See id.* at *9.

The Court's memorandum opinion and accompanying order finally approving the amended settlement were entered on May 14 and June 4, 2019, respectively. To address any remaining mystery about what the Court understood the parties to have agreed to, the Court included the following language in the order: "For the avoidance of doubt, no claims alleged in *Snyder, et al. v. U.S. Bank, N.A.*, et al., No. 1:16-cv-11675 MFK (N.D. Ill.), are released." Order Granting Final Approval of Class Action Settlement, dkt. no.362, at 15.

On June 6, the bank defendants appeared for a status conference and—for the first time before this Court—indicated that they believed, at the time the Court orally

approved the amended settlement of the *Ocwen* class action, that the settlement extinguished the claims against the bank defendants.  They conceded that they had not disclosed this understanding to the Court.  On June 13, the banks filed this motion for summary judgment.  At a status hearing on June 19, counsel for Ocwen confirmed that, even at the time the Court approved the settlement of the *Ocwen* class action, they agreed with the banks' understanding.  They, too, conceded that they had not disclosed this understanding to the Court when it considered and approved the amended settlement.  Indeed, even class counsel reluctantly admitted at the June 19 hearing that they had been aware of but had not indicated in any of their filings the banks' view that the Court's numerous, conspicuous, and frequent references to the amended settlement preserving the claims against the banks were legally ineffective.  Dismayed, the Court stated—as it had on June 6 with respect to the bank defendants and their counsel—that it had been misled by the parties in connection with approval of the settlement.  The Court noted that if, in fact, the amended settlement released the claims against the banks, that would have serious implications for the continued viability of the *Ocwen* settlement given the Court's expressed (and uncontradicted) contrary understanding at the time of approval.

The Court ordered accelerated briefing on the banks' motion for summary judgment in order to consider their arguments before the *Ocwen* settlement became final 30 days after judgment was entered on July 1, 2019.

### Discussion

"Summary judgment is proper where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law."  *Richardson v. Chi. Transit*

*Auth.*, 926 F.3d 881, 886 (7th Cir. 2019) (internal quotation marks omitted).  In considering a motion for summary judgment, the Court construes all facts and draws all reasonable inferences "in favor of the party against whom the motion under consideration was filed."  *Id.*  But the motion before the Court involves few disputes of fact; the parties agree that the banks were the trustees of loans upon which Ocwen sought to collect and do not dispute, at least for the sake of this motion, the unlawfulness of Ocwen's autodialing scheme.  Rather, the parties primarily disagree about the operation of law on the plaintiffs' claims against the bank defendants.  The motion rests on three key questions:  (1) did the plaintiffs' settlement with Ocwen extinguish claims against the banks?; (2) does that settlement have claim preclusive effect on these claims?; and (3) can the banks be directly liable for claims stemming from actions undertaken by their agent, Ocwen?

## A.    Context of the TCPA

The Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, was enacted by Congress in 1991 to provide a tool to address "abuses of telephone technology." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 371 (2012).  "The Act bans certain practices invasive of privacy and directs the Federal Communications Commission . . . to prescribe implementing regulations."  *Id.*; *see also* 47 U.S.C. § 227(b)(2).  In the Act, Congress provided for a private cause of action for parties seeking redress for violations of the TCPA.  *Mims*, 565 U.S. at 371*.*  The plaintiffs in this suit availed themselves of this private cause of action first in their suits against Ocwen and then in this suit against the banks.

The plaintiffs allege that the banks are both directly and vicariously responsible

7

for TCPA violations.  Direct liability will be discussed later in this opinion.  As for vicarious liability, the FCC has ruled that a defendant may be held vicariously liable for violations of the TCPA "under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification."  *In re Joint Petition filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6593 ¶ 28 (2013) (hereinafter "*Dish Network*"); *see also Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1072 (9th Cir. 2019).  "Formal agency," as the FCC calls it, is also known as "actual authority."  Actual authority may be express or implied.  *Bridgeview Health Care, Ltd. v. Clark*, 816 F.3d 935, 938-39 (7th Cir. 2016).  "To create apparent authority, the principal must speak, write, or otherwise act toward a third party."  *Id.* at 939.  Finally, ratification occurs when an agent acts for a principal's benefit and the principal does not repudiate the agent's actions.  *Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664, 677 (7th Cir. 2004)  It "requires that the principal have full knowledge of the facts and the choice to either accept or reject the benefit of the transaction."  *NECA-IBEW Rockford Local Union 364 Health & Welfare Fund v. A&A Drug Co.*, 736 F.3d 1054, 1059 (7th Cir. 2013).

At the outset, the Court notes, with some incredulity, that both the banks and the class applied the wrong law throughout their briefs on this motion.  As observed by the Supreme Court, "the TCPA is a federal law that both creates the claim" in question here "and supplies the substantive rules that will govern the case."  *Mims*, 565 U.S. at 372. This Court thus has jurisdiction over the plaintiffs' claims as a matter of federal question jurisdiction and must apply the controlling federal law, including federal claim preclusion law.  *See* 28 U.S.C. § 1331; *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) ("The

preclusive effect of a federal-court judgment is determined by federal common law.");
*see also Mims*, 565 U.S. at 372.  The parties' extensive reliance on Illinois state law in
their briefs—filed nearly five years after the class's initial federal claims against Ocwen
and more than two years after the suit against the banks—is therefore patently
incorrect.  The Court declines to make the same error and applies the controlling federal
standards throughout this opinion.

**B.    Vicarious liability**

The banks assert that the settlement reached between the plaintiffs and Ocwen
"extinguishes the trustees' vicarious liability as a matter of Illinois law."  Defs.' Br. in
Supp. of Mot. for Summ. J., dkt. no. 137, at 5 (capitalization altered).  In support, they
cite *American National Bank & Trust Co. v. Columbus-Cuneo-Cabrini Medical Center*,
154 Ill. 2d 347, 355, 609 N.E.2d 285, 289-90 (1992), an Illinois Supreme Court case
assessing agency liability under Illinois's state-law tort scheme.  "The reason for the
*American National Bank* rule makes sense," the banks continue, because "if a
principal's liability was not extinguished by a settlement between the agent and the
plaintiff, the agent would not receive the benefit of its bargain as the agent would remain
liable to the principal for indemnification."  Defs.' Br. in Supp. of Mot. for Summ. J., dkt.
no. 137, at 5.

The banks assert without citation that the Illinois Supreme Court's analysis
controls here.  They are wrong.  As should be apparent, this is a case under a federal
statute, the TCPA, before this Court as matter of its federal question jurisdiction.  *See
Mims*, 565 U.S. at 372.  And, although this distinction was entirely neglected by the
parties, it makes all the difference.  Under Seventh Circuit authority, contribution and

9

indemnification are issues critical to determining whether, as here, an agent's settlement with the victim of a tort can extinguish claims against the agent's principal. *See Collins v. United States*, 564 F.3d 833, 835-36 (7th Cir. 2009).

The Seventh Circuit's approach in *Collins* is instructive and, indeed, controlling. In *Collins*, the Seventh Circuit held that "the rule discharging the principal" when its agent settles with a plaintiff "has no proper application" where the principal has no right of indemnity or contribution from its negligent agent. *Id.* at 836. The Seventh Circuit went to great pains to distinguish the Illinois law the banks now seek to apply here, noting that "[u]nder Illinois law, a principal whose liability is based on the doctrine of respondeat superior . . . cannot be sued if the agent whose negligence is imputed to the principal by that doctrine . . . settles with the plaintiff." "The reason" for this rule, the court explained, "is that the principal in such a case has a common law right to be indemnified by his agent." *Id.* at 835 (citations omitted); *see also Doe v. City of Chicago*, 360 F.3d 667, 673 (7th Cir. 2004).

Critically, contribution and indemnification are unavailable for federal statutory torts like that created by the TCPA unless expressly provided. *See Donovan v. Robbins*, 752 F.2d 1170, 1178, 1181-82 (7th Cir. 1985) (hold that contribution under federal statutes is generally unavailable unless the relevant provision "provide[s] for it expressly"); *Doherty v. Wireless Broad. Sys. of Sacramento, Inc.,* 151 F.3d 1129, 1131 (9th Cir. 1998) ("A defendant held liable under a federal statute has a right to indemnification or contribution from another only if such right arises: (1) through the affirmative creation of a right of action by Congress, either expressly or implicitly, or (2) under the federal common law."). Accordingly, several courts in this district have held

that the TCPA does not confer any right to contribution or indemnification. *See, e.g.*, *Glen Ellyn Pharmacy, Inc. v. Meda Pharm., Inc.*, No. 09 C 4100, 2011 WL 6156800, at *3 (N.D. Ill. Dec. 9, 2011) ("[T]here is no right to contribution under the TCPA."); *Garrett v. Ragle Dental Lab., Inc.*, No. 2011 WL 2637227, at *1-2 (July 6, 2011) (applying *Donovan* and holding that there is no right to indemnification or contribution under the TCPA).

The Court agrees with the reasoning of *Garrett* and *Glen Ellyn Pharmacy* and concludes that there is no right to contribution or indemnification under the TCPA. The statute does not expressly provide for any such right, and the Court is unwilling to infer one. *See Donovan*, 758 F. 2d at 1178. *Collins* therefore forecloses the banks' only argument on vicarious liability in this motion—that the settlement automatically extinguishes the plaintiffs' claims against them. That is, as in *Collins*, "the rule discharging the principal has no proper application here because" the principal "has no right of indemnity from its negligent" agent. *Collins*, 564 F.3d at 836.

Indeed, the Illinois Supreme Court's analysis in *American National Bank* and the other case upon which the banks primarily rely, *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 622 N.E.2d 788 (1933), support this outcome. As the banks admit, *the* reason the Illinois Supreme Court adopted a rule under which a principal's liability is automatically extinguished upon settlement by its agent is that Illinois has a tort liability scheme under which a principal may, by default, seek indemnification or contribution from its agent. *See Am. Nat'l Bank*, 154 Ill. 2d at 354-55, 609 N.E.2d at 289; *Gilbert*, 156 Ill. 2d at 528-28, 622 N.E.2d at 797; *see also Collins*, 563 F.3d at 835 (describing Illinois law). Under such a system, the principal's liability *must* be extinguished by the

settlement, because "otherwise the agent would gain nothing from the settlement, since if the plaintiff proceeded against the principal and obtained a judgment, the principal could turn around and seek indemnity from the agent." *Doe*, 360 F.3d at 673. Because the banks have no right to contribution or indemnity under the TCPA, however, the reason animating the Illinois Supreme Court's adoption of the rule is entirely absent.

The banks are not entitled to summary judgment on the matter of vicarious liability as a matter of federal law—the law that actually applies in this case.

## C. Claim preclusion

The banks also seek summary judgment on the basis of claim preclusion, sometimes called res judicata. They contend that the judgment entered in the *Ocwen* case upon approval of the settlement between the plaintiffs and Ocwen, *see* Final Judgment of July 1, 2019, No. 14 C 8461 (N.D. Ill.), dkt. no. 369, has claim preclusive effect on the plaintiffs' claims against the banks. "Claim preclusion . . . operates to conserve judicial resources and promote finality." *Bernstein v. Bankert*, 773 F.3d 190, 225 (7th Cir. 2013). "Where it applies, it prohibits relitigation not only of claims already decided in a prior proceeding, but also those that could have been litigated in that proceeding based on the same operative facts." *McDonald v. Adamson*, 840 F.3d 343, 346 (7th Cir. 2016).

"The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor*, 553 U.S. at 891. Because the prior judgment the banks contend precludes this action were made by a federal court—that is, this Court—the Court "appl[ies] federal law to determine [that judgment's] preclusive effect." *Bernstein*, 773 F.3d at 225. "The doctrine of claim preclusion . . . applies . . . when there exists: (1) an

12

identity of the causes of actions; (2) an identity of the parties or their privies; and (3) a final judgment on the merits." *Id.* at 226 (internal quotation marks omitted). But, even where these elements seem facially to apply, there are a handful of exceptions to claim preclusion recognized by the Seventh Circuit, discussed further below. *See, e.g.*, *Cent. States, Se. & Sw. Areas Pension Fund v. Hunt Truck Lines, Inc.*, 296 F.3d 624, 629 (7th Cir. 2002) (recognizing that "under a generally accepted exception to the res judicata doctrine, a litigant's claims are not precluded if the court in an earlier action expressly reserves the litigant's right to bring those claims in a later action" (internal quotation marks omitted)); *Herrmann v. Cencom Cable Assocs., Inc.*, 999 F.2d 223, 225 (7th Cir. 1993) (citing approvingly the Restatement (Second) of Judgments § 26(1)(a) (1982) and holding that "[t]he parties can also if they want agree to split a single claim into two or more suits" to avoid claim preclusion).

The parties do not dispute that the judgment in the *Ocwen* case satisfies—or at least will satisfy, once the final judgment becomes unappealable—the third requirement of finality. Nor do they expressly address the other two elements—identity of the claims and identity of the parties or their privies. Instead, the parties focus on the application of exceptions to claim preclusion. The Court nevertheless addresses the question of identity of the parties before turning to the relevant exceptions.

### 1. Identity of the parties

First, although the parties do not raise it (and it is not necessary in order to deny this motion), the Court notes that identity of the parties may not exist in a case in a way that would permit summary judgment. As the Seventh Circuit has held, "[w]hether there is privity between a party against whom claim preclusion is asserted and a party to prior

litigation is a functional inquiry in which the formalities of legal relationships provide clues but not solutions." *Bernstein*, 733 F.3d at 227 (internal quotation marks omitted). "It is a fact-specific analysis, and short-hand terms like 'virtual representation' are of little to no use in our circuit." *Id.* It is true that where an agency relationship exists, a judgment against an agent may be preclusive of claims against her principal. *See Golden v. Barenborg*, 53 F.3d 886, 871 (7th Cir. 1995). But in cases like this, where privity allegedly arises from an agency relationship, the parties must grapple with the fact that "[a]gency is a notoriously fact-bound question" often inappropriate for summary judgment. *See Spitz v. Proven Winners N.A., LLC*, 759 F.3d 724, 731 (7th Cir. 2014) (internal quotation marks omitted).

Neither party really addressed the agency issue on the current motion. But in the banks' earlier motion for judgment on the pleadings, they contended that the contractual relationship they shared with Ocwen was something less than a common-law agency relationship. *See, e.g.*, Defs.' Br. in Supp. of Mot. for J. on Pleadings, dkt. no. 111, at 5 (arguing that contracts between the banks and Ocwen "make clear that" the banks bear "no responsibility for the actions of" Ocwen). The plaintiffs, on the other hand, contended that the banks were principals who exerted nearly complete control over the unlawful calls made by Ocwen. Although the banks may now prefer to minimize their own position on that previous motion in order to ensconce themselves in the protection of claim preclusion, the Court has reservations.

Nevertheless, because the plaintiffs did not raise this issue (and the resulting evidentiary peculiarities), the Court does not base it decision on the issue of identity of the parties. For the sake of completeness, the Court simply notes that this necessary

14

predicate for claim preclusion may not be undisputedly satisfied here.

### 2. Permissible claim splitting by acquiescence

The plaintiffs contend that, even if the three requirements of claim preclusion identified above are satisfied here, this case qualifies for multiple exceptions to the doctrine. First, they argue that this case qualifies for an exception because the banks have acquiesced to splitting the claims against them into a separate action by quietly participating in the settlement proceedings in *Ocwen* knowing that the Court intended to preserve these claims but saying nothing. The banks, on the other hand, contend that the plaintiffs' claim splitting arguments have "no bearing" on the claim preclusion analysis and are borne of the plaintiffs' "misapprehension" of claim preclusion and claim splitting. Defs.' Reply Br. in Supp. of Mot. for Summ. J., dkt. no. 152, at 3. Indeed, the thrust of the banks' reply brief can be boiled down to a single assertion as bold as it is wishful: "concepts of claim splitting have nothing to do with the actual arguments advanced by" the banks. *Id.* at 6.

The Seventh Circuit has repeatedly rejected the banks' position. Parties' consent or acquiescence to splitting claims among multiple suits is a long-recognized exception to claim preclusion. *See, e.g.*, *Lawler v. Peoria Sch. Dist. No. 150*, 837 F.3d 779, 786 (7th Cir. 2016) (recognizing claim splitting by acquiescence as "[a]n exception" to claim preclusion); *Bonstetter v. City of Chicago*, 811 F.3d 969, 975 (7th Cir. 2016) (describing claim splitting by agreement or acquiescence as an "equitable exception" to claim preclusion). This is true both in Illinois and as matter of federal law. *See, e.g.*, *Lawler*, 837 F.3d at 786 (applying Illinois claim preclusion principles); *Palka v. City of Chicago*, 662 F.3d 428, 438 (7th Cir. 2011) (analyzing "the exceptions to res judicata outlined in

the Restatement (Second) of Judgments" in assessing federal claim preclusion); *Herrmann*, 999 F.2d at 225 (endorsing, as a matter of federal law, parties' power to consensually split claims "into two or more suits" as an exception to claim preclusion); *see also, e.g.*, *Norfolk S. Corp. v. Chevron USA, Inc.*, 371 F.3d 1285, 1289 (11th Cir. 2004) (recognizing that a settlement can be made non-preclusive by the parties); *Pactiv Corp. v. Dow Chem. Co.*, 449 F.3d 1227, 1231 (Fed. Cir. 2006) (same). The rationale for this rule is on full display in cases like this one, where "disposition of part of the claim by settlement during the course of a pending action may be possible only if another part is left free for later assertion." Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4415 (3d ed. 1998).

Applying this rule, the Court concludes that the banks have acquiesced to splitting the claims in this suit from those involved in the *Ocwen* case. The banks were undisputedly on notice of the claims against Ocwen no later than January 2017. They participated in the settlement negotiations in the *Ocwen* suit in July 2017 at which the parties reached the first proposed settlement. Likewise, the banks knew that when the Court denied the motion for final approval of that settlement in September 2018, one of its key concerns was that that settlement sought to gratuitously release the claims against the banks. They then participated in another round of settlement negotiations in November 2018 at which, among other changes, the parties to the *Ocwen* case agreed that the claims against the banks would not be released by the settlement.

The plaintiffs moved for final approval of the amended settlement in the *Ocwen* case in January 2019. They explained in their motion that one of the primary changes in the amended settlement was that it no longer released the claims against the banks

and would allow the litigation again them to continue. Ocwen signaled its agreement, noting that the amended settlement would not release the claims against the banks and that, therefore, no further notice to class members was necessary before the settlement could be approved.[1] The banks received both of these written submissions and indeed participated in the negotiation that led to the amended agreement. And their counsel was also present in court at the final approval hearing. At no point did the banks' counsel attempt to correct the representations in the motions or to disabuse the Court of the notion that the amended settlement "carved the [b]anks out of the release," Pls.' Br. in Supp. of Mot. for Final Approval, dkt. no. 350, at 7, and would permit the plaintiffs' "separate litigation against the [b]anks [to] continue," *id.* at 6. This despite that fact that, in the period between September 2018—when the Court declined to approve the initial proposed settlement—and the final approval of the settlement in May 2019, counsel for the banks appeared at least *eight* status conferences in this and the *Ocwen* case, at least four of which occurred after the motion to approve the amended settlement was filed.

"The failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence in the splitting of the claim." Restatement (Second) of Judgments § 26, cmt. a, at 235. The Seventh Circuit has repeatedly affirmed the principle that a defendant acquiesces to claim splitting where it delays making an

---

[1] The settlement was otherwise more favorable to the class than the original proposed settlement that the Court rejected, and for that reason further notice to the class regarding the amended settlement would not have been legally required. But further notice would not have been prohibited either. Had the Court been advised that the amended settlement would extinguish the claims of the class against the banks, this would have materially affected the Court's analysis of whether to require further notice.

objection to parallel litigation. *See, e.g.*, *Lawler*, 837 F.3d at 785; *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 551 (7th Cir. 2016). That rule controls here. The Court finds that, by participating in settlement negotiations and by silently standing by as the other parties represented to the Court that the settlement would permit the claims against the bank to proceed unaffected, the banks acquiesced to the plaintiffs' splitting their claims and thus forfeited any argument that claim preclusion bars this action.

### 3. Permissible claim splitting by order of the Court

Next, the plaintiffs contend that an exception to claim preclusion for claims expressly carved out of a settlement by the presiding court applies here. Specifically, they point to the multitude of statements in this Court's orders in the *Ocwen* case, outlined above, that expressly carved out the claims pursued by the plaintiffs in this suit from their settlement with Ocwen. The defendants protest that the Court's express exclusion of the claims against them has no legal effect, again falsely asserting that the doctrine of claim preclusion has no application here and even accusing the plaintiffs of "deliberately misquot[ing]" the authorities they cite. *See* Defs.' Reply. in Supp. of Mot. for Summ. J., dkt. no 152, at 3. The banks' argument is, once again, entirely unpersuasive.

The Seventh Circuit has a case on this, too, though you would not guess it from the briefs. Specifically, it has held that, "under a generally accepted exception to the [claim preclusion] doctrine, a litigant's claims are not precluded if the court in an earlier action expressly reserves the litigant's right to bring those claims . . . ." *Cent. States*, 296 F.3d at 629. Binding authority does not get much clearer; settlement of some but not all claims with the approval of a court simply does not have claim preclusive effect

on claims expressly reserved. *See id.*; *see also Matter of Energy Co-op, Inc.*, 814 F.2d 1226, 1233 (7th Cir. 1987) ("If a court reserves for later resolution an issue that might otherwise have been adjudicated in the initial proceeding, res judicata will not operate to bar the subsequent suit.").

But rather than confronting this clearly controlling authority, the banks contend that a decades-old case from the Eleventh Circuit, *Citibank N.A. v. Data Lease Financial Corp.*, 904 F.2d 1498, 1504 (11th Cir. 1990), controls. In *Citibank*, the Eleventh Circuit held that an agent's intent to preserve vicarious liability claims against a principal through a carve-out in a settlement was ineffective to defeat claim preclusion. *See id.* But even if *Citibank* were controlling—which, of course, it is not—it is easily distinguishable. That case, like so many of the banks' authorities, applied state rather than federal law. *See id.* at 1500. The passage the banks cite in support of their contention that parties' intent and this Court's order reserving the claims against them had no effect expressly relied on Florida law's rule that, as under Illinois state law, a settlement between a plaintiff and a tortfeasor agent extinguishes claims against that agent's principal. *See id.* at 1504. But, as discussed at length above, that rule does not apply in the TCPA context. The Eleventh Circuit's conclusion in *Citibank* thus is not contrary to *Central States*.

The Court concludes that the "express[ ] reserv[ation]" of the claims against the banks in the Court's earlier memorandum opinion and the accompanying order precludes the operation of claim preclusion with respect to those claims. *See Central States*, 296 F.3d at 629. The motion for summary judgment is, for this reason too, denied.

### 4.     Fairness, candor to the tribunal, and other considerations

Finally, the plaintiffs argue that claim preclusion should generally not apply in the class action context and ask the Court to exercise its equitable authority to decline to apply claim preclusion because finding these claims precluded would be fundamentally unfair.  Although the long-recognized exceptions to claim preclusion outlined above clearly defeat the banks' motion for summary judgment, the Court here notes additional considerations that support (but are not necessary for) the conclusion that the motion must be denied.[2]

First, the Court notes that another exception exists under which a defendant may be "equitably estopped" from raising claim preclusion where it has itself participated in malfeasance to stymie the judicial process.  *See Nostalgia Network, Inc. v. Lockwood*, 315 F.3d 717, 721 (7th Cir. 2002).  In *Nostalgia Network*, the Seventh Circuit held that a defendant could not hide behind claim preclusion to defeat a second suit that was necessitated by her own participation in a scheme designed to scuttle the enforcement of the original judgment.  Although the banks may not have gone to quite the same lengths as the defendant in *Nostalgia Network*—she engaged in a series of sham transfers designed to help her partner hide money he owed—the banks' counsel here engaged in what can fairly be described a pattern of omission and half-truths aimed at undermining this Court's express purposes in approving the amended settlement.

As outlined previously, the *Ocwen* settlement was the product of years of

---

[2] For clarity, the Court does not here rely on any sort of generalized "public policy" exception.  *See Federated Dep't Stores, Inv. v. Moitie*, 452 U.S. 394, 401 (1981).  Rather, the Court seeks simply to elucidate additional considerations that reinforce the conclusions explained above.

negotiations and compromises, in much of which the banks participated. They were clearly and inarguably aware that the reservation of the claims against them was key to the approval of the amended settlement. But the banks now protest that they "had no duty to teach the law to Plaintiffs' counsel," and were therefore within their rights to withhold what they (albeit incorrectly) understood to be the legal consequences of the settlement. *See* Defs.' Reply. in Supp. for Mot. for Summ. J., dkt. no. 152, at 8.

The key problem with the banks' analysis is that it was not plaintiffs' counsel from whom this critical information was kept. Rather, it was this Court from whom the banks withheld information critical to its making of an informed decision regarding the *Ocwen* settlement. The banks' attorneys are no doubt aware of their obligations under the American Bar Association's Model Rules of Professional Conduct, which apply in this district under Northern District of Illinois Local Rule 83.50. ABA Model Rule 3.3 outlines an attorney's duty of candor toward the tribunal. Among other things, it forbids "mak[ing] a false statement of fact or law to a tribunal or fail[ing] to correct a false statement of material fact or law previously made to the tribunal by the lawyer," as well as "fail[ing] to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." Model Code of Prof'l Responsibility R. 3.3. And the ABA, through written opinions, has made crystal clear that an attorney's duty of candor under Rule 3.3 applies during settlement discussions where the Court is involved in those discussions. *See, e.g.*, ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 439 (2006).

This Court was misled to believe that the settlement it approved in the *Ocwen* case would have no effect on this case. Although that has turned out to be largely true,

counsel for the bank defendants believed otherwise. By withholding their understanding, they ignored their duty of candor, knowing this would frustrate the express intent of this Court. The exception to claim preclusion outlined in *Nostalgia Network* therefore provides additional support for the Court's rejection the banks' effort to dodge behind the doctrine of claim preclusion.

Finally, the Court notes that the plaintiffs may also be correct that class actions such as the one that they brought against Ocwen are treated somewhat differently from other lawsuits for the purposes of claim preclusion. In *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 597 (N.D. Ill. 2009), Judge St. Eve recognized that there is a "general exception for class actions" from the application of claim preclusion. The parties did not develop this argument fully, however, and it is unnecessary to resolve it for the purposes of this motion.

**D.    Direct liability**

The banks also seek summary judgment on the plaintiffs' claims for direct violations of the TCPA. Specifically, they contend that none of facts alleged or the evidence proffered by the plaintiffs supports a finding of direct liability. The banks point to a recent opinion by the Ninth Circuit interpreting the statute, *Henderson*, 918 F.3d at 1072, and a 2013 FCC Order, *Dish Network*, 28 F.C.C.R. at 6593 ¶ 28, which they say effectively foreclose the plaintiffs' theory. They also take issue with the plaintiffs' reliance on a 2008 FCC order that seemed to suggest principals could be directly liable for calls made by their agents. That ruling was, in the banks' view, clearly wrong to the extent that it suggested principals could be directly (rather than vicariously) liable. They also contend that any ambiguity in the 2008 FCC order was corrected by the 2013 FCC

order, which clarified that common law agency principles apply.

The plaintiffs, in contrast, point to the 2008 FCC order and to dicta in a Seventh Circuit case interpreting the statute and that rule. *See Soppet v. Enhanced Recovery Co., LLC*, 678 F.3d 637, 642 (7th Cir. 2012). They contend that the 2013 rule did not displace the 2008 FCC order's sweeping statement that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules & Regs. Implementing the TCPA*, 23 FCC Rcd. 559, ¶ 10 (2008). The plaintiffs argue at length that the 2013 FCC order was meant only to apply to TCPA violations attributable to telemarketers and not to those violations committed by creditors or their agents.

The banks have the better of this argument. Notwithstanding the plaintiffs' unconvincing efforts to distinguish the 2013 FCC order, the Court is persuaded by the analysis in *Henderson*, which concluded that the 2008 FCC order did not create automatic direct liability for a creditor on whose behalf a debt collector violated the TCPA. *See Henderson*, 918 F.3d at 1072. In order to prevail, the court concluded, the plaintiff needed to demonstrate that the creditor either itself initiated the unlawful phone calls or could be held vicariously liable under federal common law agency principles. That is, direct liability could only attach where to the person or entity who actually initiated the unlawful phone calls.

Even assuming, for the purposes of this motion, that the trustees are creditors—a point they contest—the motion must be granted with respect for the plaintiffs' claims for direct TCPA liability. The plaintiffs have pointed to no evidence from which a reasonable jury could conclude that the banks themselves initiated the disputed phone

calls.  Without such evidence, the only sort of liability that could possible attach to the banks is vicarious, discussed extensively above.  The motion for summary judgment is, therefore, granted on the question of the banks' direct liability.

### Conclusion

For the foregoing reasons, the Court denies the defendants' motion for summary judgment with respect to vicarious liability and claim preclusion but grants the motion with respect to direct liability [dkt. no. 136].  The case remains set for a status hearing on July 15, 2019 at 9:30 a.m.

MATTHEW F. KENNELLY
United States District Judge

Date:  July 14, 2019