IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEITH SNYDER, SUSAN MANSANAREZ, and TRACEE A. BEECROFT, individually and on behalf of all others similarly situated, | NO. 1:16-cv-11675 |
| Plaintiffs, | Class Action |
| v. | Jury Trial Demand |
| U.S. BANK N.A., WILMINGTON TRUST, N.A., CITIBANK, N.A., and DEUTSCHE BANK NATIONAL TRUST COMPANY, individually and in their Capacities as Trustees, | Honorable Matthew F. Kennelly |
| Defendants. | |

## PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH DEUTSCHE BANK NATIONAL TRUST COMPANY

**TABLE OF CONTENTS**

Page No.

I.    INTRODUCTION .......................................................................................1

II.   STATEMENT OF FACTS ........................................................................2

      A.    Plaintiff's complaint and background of the litigation ......................2

            1.    Procedural history ...................................................................2

      B.    Discovery conducted.........................................................................3

      C.    The proposed settlement ...................................................................5

            1.    The proposed Settlement Class................................................5

            2.    Settlement fund .......................................................................5

                  a.    Notice and claims administration.................................5

                  b.    Attorneys' fees and costs ............................................6

                  c.    Incentive awards .........................................................6

                  d.    Payments to Settlement Class Members ......................7

                  e.    Uncashed checks .........................................................7

            3.    Release ....................................................................................7

III.  AUTHORITY AND ARGUMENT...........................................................8

      A.    This Court will be able to certify the Settlement Class .....................8

            1.    The Settlement Class satisfies the requirements of Rule 23(a)...............8

            2.    The Settlement Class satisfies the requirements of Rule 23(b)(3)........10

      B.    This Court will be able to approve the Settlement as fair, adequate, and
            reasonable .......................................................................................11

1.  Plaintiff and her counsel have adequately represented the settlement class. They were well informed of the strengths and weaknesses of the claims and defenses and support the settlement ........................................................................................12

2.  The settlement is the result of arm's-length, non-collusive negotiations ...........................................................................................13

3.  The relief provided by the settlement is adequate considering the strength of Plaintiff's case, the risk of maintaining a class action through trial, and the risk, cost, and delay of trial and appeal ....................................................................................................14

4.  The settlement benefits will be fairly distributed to Settlement Class Members.......................................................................................18

5.  Plaintiff's counsel will request approval of a reasonable fee and expenses ...................................................................................................19

6.  The requested incentive award is reasonable.......................................20

7.  The reaction of Settlement Class Members to the proposed Settlement ...............................................................................................21

C.  The Notice Plan complies with Rule 23 and due process................................21

D.  The schedule for final approval .......................................................................22

IV.  CONCLUSION..........................................................................................................23

# TABLE OF AUTHORITIES

**Page No.**

## FEDERAL CASES

*Aliano v. Joe Caputo & Sons-Algonquin, Inc.*,
   No. 09 C 910, 2011 WL 1706061 (N.D. Ill. May 5, 2011) ........................................17

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)...............................................................................10, 11, 21

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
   No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) ......................................11

*Birchmeier v. Caribbean Cruise Line, Inc.*,
   302 F.R.D. 240 (N.D. Ill. 2014)...............................................................................9

*Bridgeview Health Care Center Ltd. v. Clark*,
   No. 09 C 5601, 2013 WL 1154206 (N.D. Ill. Mar. 19, 2013) ....................................16

*Chapman v. Wagener Equities Inc.*,
   747 F.3d 489 (7th Cir. 2014) ...................................................................................9

*Charvat v. Carnival Corp.*,
   No. 12-cv-05746, 2019 WL 5576932 (N.D. Ill. Oct. 28, 2019) ...........................10, 11

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) .................................................................................20

*Couser v. Comenity Bank,*
   125 F. Supp. 3d 1034 (S.D. Cal. 2015).....................................................................14

*Denova v. Ocwen Loan Serv.*,
   No. 8:17-cv-2204-T-23AAS, 2019 WL 4635552 (M.D. Fla. Sept. 24, 2019) ............16

*Espejo v. Santander Consumer USA, Inc.*,
   No. 11 C 8987, No. 12 C 9431, 2019 WL 2450492 (N.D. June 12, 2019) .................17

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
   No. 07 C 5953, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009).................................9, 15

*Gehrich v. Chase Bank USA, N.A.*,
   316 F.R.D. 215 (N.D. Ill. 2016)...............................................................................14

*Golan v. FreeEat.com*,
    930 F.3d 950 (8th Cir. 2019) ........................................................17

*Heekin v. Anthem, Inc.*,
    No. 1:05-01908, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) ..................20

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
    270 F.R.D. 330 (N.D. Ill. 2010)....................................................15

*In re Capital One TCPA Litig.*,
    80 F. Supp. 3d 781 (N.D. Ill. 2015) ............................................1, 20

*In re S.W. Airlines Voucher Litig.*,
    799 F.3d 701 (7th Cir. 2015) ......................................................13

Isby *v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ..................................................12, 13

*Jamison v. First Credit Servs., Inc.*,
    290 F.R.D. 92 (N.D. Ill. 2013)....................................................15

*Keyes v. Ocwen Loan Serv., LLC*,
    335 F. Supp. 3d 951 (E.D. Mich. 2018)..........................................16

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015)..............................................14, 18

*McCabe v. Crawford & Co.*,
    210 F.R.D. 631 (N.D. Ill. 2002)....................................................8

*Ortiz v. Fiberboard Corp.*,
    527 U.S. 815 (1999)................................................................13

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ......................................................19

*Phillips v. Sheriff of Cook Cty.*,
    828 F.3d 541 (7th Cir. 2016) ........................................................9

*Redman v. RadioShack Corp.*,
    768 F.3d 622red (7th Cir. 2014) ..................................................19

*Reynolds v. Beneficial Nat'l Bank*,
    288 F.3d 277 (7th Cir. 2002) ......................................................13

*Silverman v. Motorola Solutions, Inc.*,
   739 F.3d 956 (7th Cir. 2013) ...................................................................................20

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
   463 F.3d 646 (7th Cir. 2006) ...................................................................................12

*Tomeo v. CitiGroup, Inc.*,
   No. 13 C 4046, 2018 WL 4627386 (N.D. Ill. Sept. 27, 2018)....................................15

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)..................................................................................................9

*Wilkins v. HSBC Bank Nevada, N.A.*,
   No. 14 C 190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015)..........................................18

*Will v. Gen. Dynamics Corp.*,
   Civil No. 06-698-GPM, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010)........................20

*Wong v. Accretive Health, Inc.*,
   773 F.3d 859 (7th Cir. 2014) ...................................................................................12

*Wright v. Nationstar Mtg LLC*,
   No. 14 C 10457, 2016 WL 4505169 (N.D. Ill. Aug. 28, 2016)...................................17

## FEDERAL STATUTES

47 U.S.C. § 227(b)(3) ...................................................................................................14

## FEDERAL RULES

Fed. R. Civ. P. 23 ...........................................................................................................8

Fed. R. Civ. P. 23(a)(3)....................................................................................................9

Fed. R. Civ. P. 23(a)(4)..................................................................................................10

Fed. R. Civ. P. 23(b)(3)............................................................................................10, 11

Fed. R. Civ. P. 23(c)(2)(B) .............................................................................................21

Fed. R. Civ. P. 23(e)(1).............................................................................................8, 21

Fed. R. Civ. P. 23(e)(2)..................................................................................................12

Fed. R. Civ. P. 23(g) ...................................................................................................10

## OTHER AUTHORITIES

4 William B. Rubenstein, Newberg on Class Actions § 12:28 (5th ed.) ..................................19

Fed. R. Civ. P. 23 advisory committee's note on 2018 Amendment.........................................8

*Manual for Complex Litigation* § 21.62, n. 971 ......................................................20

# I.  INTRODUCTION

Plaintiff Tracee Beecroft alleges that she and hundreds of thousands of others received — without their consent — repeated, annoying, automated calls on behalf of Defendant Deutsche Bank National Trust Company ("DBNTC"). Plaintiff alleges that the calls violated the Telephone Consumer Protection Act ("TCPA"), 27 U.S.C. § 227 *et seq.*, and that DBNTC should be held vicariously liable for the calls, which were placed by loan servicer Ocwen Loan Servicing ("Ocwen"). Ocwen is a company that services mortgage loans held in residential mortgage-backed securitization ("RMBS") trusts for which DBNTC served as trustee. This Court already has granted final approval to a TCPA class action settlement between Ms. Beecroft, two other plaintiffs, a class of consumers, and Ocwen. *See Snyder, et al. v. Ocwen Loan Servicing, LLC*, No. 1:14-cv-08461, DE #362 (N.D. Ill.) (the "Ocwen Litigation"). Ms. Beecroft and DBNTC now have agreed to settle Ms. Beecroft's individual and class claims against DBNTC.

Pursuant to the settlement's terms, DBNTC agrees to pay $2,541,390 into a non-reversionary Settlement Fund. Eligible Settlement Class Members who file qualified claims will receive a *pro rata* cash payment from the fund, estimated to be $25, depending on the claims rate and other expenses and fees that come from the fund. The Settlement Fund will also be used to pay attorneys' fees to Plaintiff's counsel, an incentive award to Plaintiff, and settlement administration expenses approved by this Court. Plaintiff's counsel will request an award of attorneys' fees of up to $847,130, actual litigation costs estimated to be less than $15,000, and Plaintiff will request an incentive award of $10,000. The proposed settlement administrator, P&N Consulting, estimates its expenses will not exceed $279,749.

Because the settlement is fair, adequate, and reasonable, Plaintiff respectfully requests that this Court take the following initial steps in the settlement approval process: (1) provisionally certify the proposed settlement class; (2) make a preliminary finding that this Court

will be able to approve the settlement as fair, reasonable, and adequate; (3) approve the proposed notice plan and direct that notice be provided to the Settlement Class Members; (4) appoint P&N Consulting as the settlement administrator; and (5) schedule the final approval hearing and related dates.

## II. STATEMENT OF FACTS

**A.    Plaintiff's complaint and background of the litigation.**

    1.    <u>Procedural history.</u>

Before filing this action, Tracee Beecroft and other consumers sued Ocwen, alleging that Ocwen used an Aspect autodialer to make millions of debt-collection calls to the cellular telephones of Plaintiff and other consumers without first obtaining prior express consent, or after having revoked consent. *See Snyder, et al. v. Ocwen Loan Servicing, LLC*, No. 1:14-cv-08461, DE #1 (N.D. Ill.). On November 17, 2016, several years into the Ocwen Lawsuit, Ms. Beecroft and the other plaintiffs asked for permission to amend the complaint to add claims against DBNTC and other trustees that held securitized mortgage loans serviced by Ocwen (the "Trustees"). *Id.* at DE #110. The plaintiffs alleged that the trusts included loans of Ms. Beecroft and proposed class members in the Ocwen Lawsuit. Ms. Beecroft alleged that the debt-collection calls Ocwen made violated the TCPA and were made on the Trustees' behalf and that the Trustees were directly and vicariously liable under the TCPA. *Id.*

This Court denied the request to amend as untimely. *Snyder*, at DE #126. Ms. Beecroft and the other plaintiffs then filed this lawsuit. DE #1. In their Complaint, Ms. Beecroft and the other plaintiffs alleged that the Trustees were both directly and vicariously liable for the calls that Ocwen placed.

In 2017, Ms. Beecroft and the other plaintiffs reached a class-wide settlement with Ocwen to settle the Ocwen Lawsuit. The settlement also purported to release claims alleged in

this case. Although the settlement was preliminarily approved, this Court declined to grant final approval. The parties to both lawsuits subsequently attended mediation in an effort to reach satisfactory terms that would settle both lawsuits. That mediation did not succeed. However, Beecroft and the other plaintiffs were able to reach a revised settlement with Ocwen, which was memorialized in an agreement that stated that claims against the Trustees were carved out of the release. This Court finally approved the revised settlement with Ocwen on June 4, 2019.

On June 13, 2019, the Trustees moved for summary judgment, arguing that the revised settlement with Ocwen extinguished Beecroft's claims. DE #136. On July 14, 2019, this Court denied the Trustees' attempt to dismiss Beecroft's vicarious liability claim (DE #157) and subsequently denied the Trustees' request to certify the question to the Seventh Circuit (DE #162). However, this Court granted dismissal of Beecroft's claims that DBNTC was directly liable for the claims asserted in the litigation.

Thereafter, the parties engaged in informal settlement negotiations. Declaration of Beth E. Terrell in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Terrell Decl.") ¶ 7. After those negotiations failed, the parties attended a full-day mediation with JAMS mediator, Robert A. Meyer, on August 29, 2019, at which time the parties reached agreement on material terms and executed a term sheet. *Id*.

**B.** **Discovery conducted.**

After the Complaint was filed, the parties exchanged initial disclosures. Terrell Decl. ¶ 3. Plaintiff then served interrogatories, requests for production of documents, and requests for admission, to which Defendant responded. *Id*. Through these discovery requests, Plaintiff obtained and analyzed information, including contracts and correspondence. *Id*. Plaintiff served a second set of requests for production seeking information regarding (1) the relationship between the loans DBNTC held in trust and Ocwen and (2) any knowledge that DBNTC had about any

alleged violations of the law by Ocwen. *Id.* ¶ 4. Overall, DBNTC produced over 25,000 pages of documents, which Plaintiff's counsel used to evaluate the strength of the claims and defenses in the action. *Id.* Notably, because Plaintiff's counsel prosecuted the Ocwen Litigation, Plaintiff's counsel already had access to large volumes of documents, information, and testimony concerning the putative class and the methods that Ocwen used to contact class members.

Plaintiff also responded to interrogatories, requests for production, and requests for admission propounded by Defendant. *Id.* ¶ 5. And the parties exchanged information during the mediation process, including information relating to the number of debtors with loans held in trusts administered by DBNTC that may have received calls from Ocwen. *Id.*

Finally, Plaintiff's counsel conducted confirmatory discovery. *Id.* ¶ 9. Specifically, Plaintiff's counsel deposed DBNTC's Rule 30(b)(6) representative, Vice President Ronaldo Reyes, who testified that DBNTC team members did not recall receiving complaints or seeing documentation related to Ocwen's alleged practice of calling borrowers without consent, or Ocwen's alleged violation of the Telephone Consumer Protection Act, and that DBNTC did not have any oversight role over Ocwen as a mortgage loan servicer. *Id.* Plaintiff's counsel also deposed DBNTC's expert, Elaine Smith, who explained the steps she took to identify the Settlement Class Members in reliance on Ocwen's data. *Id.* ¶ 10. Namely, Ms. Smith started with Ocwen's calling data, reviewed Ocwen's investor code data, which purported to identify which loans were held in which RMBS trusts and which entity acted as trustee for each of the trusts, and identified unique cell phone numbers called during the class period that Ocwen associated with loans that purportedly were held in trusts that DBNTC administered. *Id.* Last, DBNTC answered a confirmatory interrogatory regarding the types of differences in the separate agreements that govern RMBS trusts for which DBNTC serves as trustee. *Id.* ¶ 11.

**C.     The proposed settlement.**

The details of the settlement are contained in the Settlement Agreement (see Terrell Decl., Ex. 1), the terms of which are summarized below.

1.     The proposed Settlement Class.

The proposed class definition for settlement purposes (the "Settlement Class") is:

> All persons who were called by Ocwen on the 339,123 unique cell phone numbers listed on Exhibit G to this Settlement Agreement (filed with the Court under seal) using its Aspect dialing system between December 28, 2012 and through and including the date of the Preliminary Approval Order ("Settlement Class Period").

Settlement Agreement § 3.1. The Settlement Class specifically excludes: (i) those persons who were called by Ocwen using its Aspect dialing system during the Settlement Class Period only on numbers not included on Exhibit G; (ii) individuals who are or were during the Settlement Class Period officers or directors of DBNTC or any of its Affiliates; (iii) any justice, judge, or magistrate judge of the United States or any State, their spouses, and persons within the third degree of relationship to either of them, or the spouses of such persons; and (iv) all individuals who file a timely and proper request to be excluded from the Settlement Class.

2.     Settlement fund.

Defendant will establish a non-reversionary common "Settlement Fund" of $2,541,390, which will be used to pay settlement administration costs, any court-approved attorneys' fees and litigation expenses, incentive award to Plaintiff approved by this Court, and cash payments to claimants who certify that they are the user or subscriber of a cell phone on Exhibit G to the Settlement Agreement. Settlement Agreement § 4.

a.     *Notice and claims administration.*

The Settlement Agreement provides that any settlement administration fees and costs will be paid from the Settlement Fund. § 5.2. After a competitive bid process, Plaintiff's counsel

proposes to retain P&N Consulting as the settlement administrator, subject to Court approval.

P&N Consulting has estimated its costs to carry out the notice plan and otherwise administer the

settlement agreement at $279,749. Terrell Decl. ¶ 28.

> b.    *Attorneys' fees and costs.*

Plaintiff's counsel will request that this Court approve an award of attorneys' fees of up

to $847,130, which amounts to one-third of the Settlement Fund. Terrell Decl. ¶ 23. Plaintiff's

counsel also will request that they be reimbursed for the out-of-pocket costs they incurred

prosecuting this case, which will not exceed $15,000. *Id.* ¶ 25. Plaintiff's counsel will file their

motion for an award of fees and costs no later than thirty days before the deadline for the

settlement administrator to send notice. Settlement Agreement § 2.12.2.

> c.    *Incentive awards.*

The Settlement Agreement provides that Plaintiff's counsel may request that this Court

approve an incentive award for Ms. Beecroft. Settlement Agreement § 15.2. If approved by this

Court, Ms. Beecroft will receive an incentive award of $10,000. Terrell Decl. ¶ 26. Plaintiff

assisted with drafting the Complaint, responded to discovery, sat for a deposition, and was

prepared to testify at trial. *Id.* The award compensates Plaintiff for her time, effort, and risks

undertaken in prosecuting the case.

   d. *Payments to Settlement Class Members.*

The remainder of the Settlement Fund will be distributed proportionately to all Settlement Class Members[1] who submit a valid claim form by mail, or through the Settlement Website utilizing an e-signature format. Settlement Agreement § 7.1.

Once all the claims have been received, the Settlement Administrator will calculate the amount of an individual Settlement Class Member's award on a *pro rata* basis, after deducting any Court-awarded attorneys' fees and expenses, notice and claims administration expenses, and any Court-awarded incentive awards for the named Plaintiff. Settlement Agreement § 4.1.3.

If administratively feasible, the Settlement Administrator will make a second distribution to valid Claimants of any amounts remaining after the initial distribution. *Id*. § 4.1.5. Assuming this Court grants the requested attorneys' fees and expenses, incentive awards, and administration costs, Plaintiff estimates that each Claimant will receive approximately $25 based on a 15% claims rate. Terrell Decl. ¶ 29.

   e. *Uncashed checks.*

Any funds remaining from uncashed checks after the second distribution will be distributed to an appropriate consumer advocacy organization approved by this Court. Plaintiff intends to ask this Court to distribute unclaimed funds to Public Justice Foundation.[2] Settlement Agreement § 4.1.5. No amount of the Settlement Fund will revert to Ocwen. *Id.*

  3. <u>Release.</u>

The release is appropriately tailored to the claims made in the action. In exchange for the benefits provided by the settlement, Settlement Class Members will release any legal claims that may arise from or relate to Ocwen's alleged use of equipment or methods to contact or attempt to

---

[1] The settlement defines "Settlement Class Members" as any person who falls within the definition of the Settlement Class and who has not submitted a valid exclusion request.

[2] Plaintiff's counsel, Beth Terrell, is the President of Public Justice.

contact Settlement Class Members by telephone for servicing or debt collection purposes from December 28, 2012 through the date of preliminary approval. These claims include but are not limited to claims that relate to or arise out of Ocwen's use of an "automatic telephone dialing system" or "artificial or prerecorded voice" as defined in the Telephone Consumer Protection Act. Settlement Agreement § 10.1.

### III. AUTHORITY AND ARGUMENT

Under Rule 23(e)(1), a district court should direct notice of a proposed settlement to the class members who would be bound by it only if the parties show that the court will likely be able to approve the proposed settlement and certify the class for purposes of judgment. Fed. R. Civ. P. 23(e)(1). "This decision has been called 'preliminary approval' of the proposed class certification in Rule 23(b)(3) actions." Fed. R. Civ. P. 23 advisory committee's note on 2018 Amendment. Notice of the proposed settlement to the class members who would be bound is warranted here.

**A.      This Court will be able to certify the Settlement Class.**

A class should be certified when the Rule 23(a) requirements of numerosity, commonality, typicality and adequacy, and one of the requirements of Rule 23(b) are satisfied. Fed. R. Civ. P. 23. Here the proposed Settlement Class and release are appropriately limited to claims arising out of DBNTC's agent's — Ocwen's — use of automated dialing equipment and its dialing practices.

1.      <u>The Settlement Class satisfies the requirements of Rule 23(a).</u>

Evidence that a proposed class has at least 40 members is sufficient to show joinder is impracticable and the numerosity requirement is met. *McCabe v. Crawford & Co.,* 210 F.R.D. 631, 643 (N.D. Ill. 2002). The Settlement Class consists of persons associated with 14,531

unique cell phone numbers. Even if some of the Settlement Class Members are associated with more than one cell phone number, the class comprises far more than 40 people and numerosity is satisfied. *See Chapman v. Wagener Equities Inc.,* 747 F.3d 489, 492 (7th Cir. 2014) (under the numerosity requirement, a court can certify a class so long as it is reasonable to believe the class is large enough to make joinder impracticable).

The commonality requirement under Rule 23(a)(2) requires that class members' claims "depend upon a common contention," of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Phillips v. Sheriff of Cook Cty*., 828 F.3d 541, 550 (7th Cir. 2016). The determinative common question in this case is whether DBNTC can be held vicariously liable for the allegedly unlawful calls of Ocwen. This question, combined with the fact that Plaintiff has alleged class members suffered a common injury, suffices to establish commonality. *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 251 (N.D. Ill. 2014) (finding commonality satisfied in TCPA case and observing "there is a common injury, resulting from receipt of the allegedly offending calls, not to mention common questions regarding the liability of defendants who did not themselves place the calls").

Typicality is satisfied because Plaintiff's claims are coextensive with, and not antagonistic to, the interests of the Settlement Class. *See* Fed. R. Civ. P. 23(a)(3); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 WL 2581324, at *15-16 (N.D. Ill. Aug. 20, 2009). Here, Plaintiff and Settlement Class Members all seek damages resulting from Ocwen's practice of using the Aspect software to call consumers on their cellphones without their consent in order to collect a debt on behalf of trusts administered by DBNTC. Because the Settlement Class's claims all arise from the same conduct, typicality is satisfied.

Finally, the adequacy requirement is satisfied when the class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Ms. Beecroft has actively participated in the case, including by consulting with counsel, reviewing the Complaint, and responding to written discovery requests including interrogatories and requests for production, and requests for admission. Terrell Decl. ¶ 26. She is adequate. *See Charvat v. Carnival Corp.*, No. 12-cv-05746, 2019 WL 5576932, at *3 (N.D. Ill. Oct. 28, 2019) (citing *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)).

In appointing class counsel, the court considers the work counsel has done to prosecute the action, counsel's experience handling class actions and knowledge of the applicable law, and the resources counsel will devote to the action. Fed. R. Civ. P. 23(g). Plaintiff's counsel are well-qualified to serve as class counsel. They are experienced class action litigators with knowledge of the law governing consumer protection, including claims under the Telephone Consumer Protection Act. Terrell Decl. ¶¶ 14-22. Plaintiff's counsel have diligently litigated this case for close to three years and prevailed on key motions. They have already invested hundreds of hours into the case. *See id.* ¶ 24.

2. The Settlement Class satisfies the requirements of Rule 23(b)(3).

Class certification is appropriate under Rule 23(b)(3) when "questions of law or fact common to the members of the class predominate over any question affecting only individual members, and … a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

Predominance tests whether proposed classes are "sufficiently cohesive to warrant adjudication by representation." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Predominance is

satisfied so long as individual issues do not "overwhelm" common issues. *Id.* (quoting *Amgen Inc. v. Ct. Ret. Plans & Trust Funds*, 568 U.S. 455, 468 (2013)). Common issues predominate here because the central common issue is whether DBNTC can be held vicariously liable for unlawful calls placed by Ocwen. This question speaks to issues "at the heart" of each person's claim. *See Charvat*, 2019 WL 5576932 at *5.

Superiority is also satisfied because resolution of thousands of the relatively small-value claims in this one action is far preferable to a multitude of individual lawsuits and promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). And since the claims are being certified for purposes of settlement, there are no issues with manageability. *Amchem Prods.*, 521 U.S. at 620. ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

**B.    This Court will be able to approve the Settlement as fair, adequate, and reasonable.**

The court's role at the preliminary approval stage is to ensure that the settlement is within the "range of possible approval," and thus whether notice to the class of the settlement's terms and holding a formal fairness hearing would be worthwhile. *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011) (quoting *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980)). Under Rule 23(e)(2), a district court considers whether (A) the class representatives and their counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided by the settlement is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief including the method of processing class-member claims, if required; (iii) the terms of any

proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3) made in connection with the proposed settlement; and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2) (eff. Dec. 1, 2018).

These factors are similar to those previously identified by the Seventh Circuit, including: (1) the strength of plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length, and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863-64 (7th Cir. 2014); *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

1.    <u>Plaintiff and her counsel have adequately represented the settlement class. They were well informed of the strengths and weaknesses of the claims and defenses and support the Settlement.</u>

As discussed above, Plaintiff has taken an active role in prosecuting this action and her counsel are experienced class action litigators who have already invested significant time and money into the case as well as the related Ocwen Lawsuit. Among other things, the parties have litigated Defendant's motions for judgment on the pleadings and for summary judgment, and exchanged extensive written discovery. Terrell Decl. ¶¶ 3-6. The parties have exchanged thousands of pages of documents. *Id.* ¶ 4. Plaintiff has engaged in sufficient discovery to assess the strength of her claims, the amount of damages incurred by the Settlement Class, and the risks of continued litigation. *Id.* Through these efforts, and counsel's efforts in prosecuting the Ocwen Litigation, they have obtained sufficient information to make an informed decision with respect to the Settlement and strongly support it as fair adequate and reasonable. *See Synfuel*, 463 F.3d at 653 (considering the extent of discovery completed and the stage of the proceedings in

determining whether a class action settlement is fair, adequate and reasonable); *Isby*, 75 F.3d at 1200 (noting "the discovery and investigation conducted by class counsel prior to entering into settlement negotiations was 'extensive and thorough'").

    2.    <u>The settlement is the result of arm's-length, non-collusive negotiations.</u>

 "One may take a settlement amount as good evidence of the maximum available if one can assume that parties of equal knowledge and negotiating skill agreed upon the figure through arms-length bargaining." *Ortiz v. Fiberboard Corp.*, 527 U.S. 815, 852 (1999).

Plaintiff's counsel negotiated the settlement with the benefit of many years of prior experience and a solid understanding of the facts and law of this case. Terrell Decl. ¶¶ 2-6, 9-11. Plaintiff's counsel have extensive experience litigating and settling class actions, and TCPA class actions in particular. Terrell Decl. ¶¶ 14-22; *see also Snyder*, DE ## 252-3 (Burke Decl.), 252-5 (Cabrera Decl.), 252-6 (Heaney Decl.). Plaintiff's counsel believe the settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class as a whole. Terrell Decl. ¶ 30.

The Seventh Circuit has identified "red flags" that may suggest that counsel allowed pursuit of their own self-interest to infect settlement negotiations, including when the record indicates counsel engaged in side dealings, the parties agree to a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, or the parties agree to a "kicker" clause that any fees not awarded will revert to defendants rather than be added to the class fund. *See, e.g., Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002) (finding district court abused its discretion when approving settlement where there existed evidence of self-dealing); *In re S.W. Airlines Voucher Litig.*, 799 F.3d 701, 712-713 (7th Cir. 2015) (noting clear-sailing and kicker clauses weigh against fairness of a settlement, but

declining to hold that they constitute *per se* bars to settlement approval). None is present in this settlement. Because Plaintiff's counsel will be paid from the same fund as Settlement Class Members, they were incentivized to negotiate the largest fund possible. This Court will, of course, have ultimate discretion over the amount of the attorneys' fee award after reviewing Plaintiff's counsel's motion. Any requested fees or incentive award not approved by this Court will be distributed to Settlement Class Members. *Id.* § 4.1.5.

       3.      <u>The relief provided by the settlement is adequate considering the strength of Plaintiff's case, the risk of maintaining a class action through trial, and the risk, cost, and delay of trial and appeal.</u>

DBNTC's agreement to pay $2,541,390 into a Settlement Fund confers a substantial benefit on the class. Depending on the number of claimants, each eligible Settlement Class member will receive a cash payment of approximately $25. Terrell Decl. ¶ 29. This award is comparable to other TCPA settlements in the Seventh Circuit and elsewhere. *See In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) ("The recovery per claimant here is $34.60. That number falls within the range of recoveries in other TCPA actions ..."); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493-94 (N.D. Ill. 2015) ($30) (Kennelly, J.); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 223 (N.D. Ill. 2016) ("each Collection Call Subclass member filing a timely claim will receive between $19.40 and $77.60"); *Couser v. Comenity Bank,* 125 F. Supp. 3d 1034 (S.D. Cal. 2015) (approving settlement of $13.75 per class member).

The cash award does not constitute the full measure of statutory damages potentially available to the Settlement Class, who theoretically could recover $500, or up to $1,500, in statutory damages for each violation of the TCPA if they were to prevail in litigation. *See* 47 U.S.C. § 227(b)(3). But this fact alone should not weigh against settlement approval. Settlement is a compromise, and courts need not reject a settlement "solely because it does not provide a

complete victory to plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (St. Eve, J.).

Plaintiff is confident in the strength of her case but also pragmatic about the risks inherent in litigation and various defenses available to DBNTC. Plaintiff still had several hurdles to clear before resolution through further litigation, including additional fact discovery, expert discovery, class certification, summary judgment, and ultimately trial and any appeal that followed. Plaintiff faced several serious factual and legal challenges to her claims.

For example, Plaintiff anticipates that DBNTC would have argued that determining who consented is an individualized issue that requires a loan-by-loan analysis because Ocwen has consistently maintained that determining which borrowers consented *en masse* is nearly impossible because evidence of consent exists in three separate systems that cannot be searched by a computer, or can only be searched on a loan-by-loan basis. *Snyder*, DE #239 at 4-5. "There is a split of opinion in TCPA cases on whether issues of individualized consent predominate over common questions of law or fact so as to prevent class certification." *Compare Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 WL 4627386 (N.D. Ill. Sept. 27, 2018) (holding individualized issues of consent predominated where defendant's record keeping did not allow class wide consent determination); *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 106-07 (N.D. Ill. 2013) (declining to certify class where defendant presented evidence that some proposed class members had consented to calls and where determining whether a person had consented would require a "labor intensive review" of defendant's account notes); *with G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 WL 2581324, at *6 (N.D. Ill. Aug. 20, 2009) ("[H]ypothetical defenses do not overcome the predominance of common questions of law and fact among potential class members"). Because Plaintiff contends that DBNTC should not be

able to take advantage of Ocwen's shoddy record keeping, Plaintiff believes she would have successfully certified one or more Rule 23(b) classes. However, there is a risk that this Court would decline to grant certification, leaving only Ms. Beecroft to pursue her individual claims.

Even if Plaintiff convinced this Court that class certification is appropriate, she still risked losing on the merits. The central issue to be determined at trial is whether DBNTC can be held vicariously liable for calls placed by Ocwen based on agency law principles. Vicarious liability typically is a fact-intensive inquiry that turns on whether the principal authorizes the agent's illegal conduct. *See Bridgeview Health Care Center Ltd. v. Clark*, No. 09 C 5601, 2013 WL 1154206, at *6 (N.D. Ill. Mar. 19, 2013) (denying plaintiff's motion for summary judgment because defendant submitted evidence showing that the defendant did not authorize the transmission of allegedly unlawful faxes). DBNTC would argue that Ocwen was neither acting on behalf of DBNTC nor subject to DBNTC's control when it made the allegedly violative phone calls. To resolve the vicarious liability question, the parties would need to conduct extensive discovery into the amount of control that DBNTC exercised over Ocwen's calling practices and DBNTC's knowledge of the particulars of the unlawful calls. A jury then would decide whether Ocwen acted as DBNTC's agent and whether the unlawful conduct was in the scope of that agency relationship. If DBNTC prevailed, Plaintiff and the class would receive nothing.

In addition, courts disagree about whether Ocwen's Aspect dialing system is an ATDS under the TCPA. *Compare Denova v. Ocwen Loan Serv.*, No. 8:17-cv-2204-T-23AAS, 2019 WL 4635552, at *4 (M.D. Fla. Sept. 24, 2019) (finding Ocwen's Aspect dialer does not constitute an automatic telephone dialing system under the TCPA because it does not "possess the capacity to generate random or sequential numbers"); *Keyes v. Ocwen Loan Serv., LLC*, 335 F. Supp. 3d

951, 962 (E.D. Mich. 2018) (same) *with Espejo v. Santander Consumer USA, Inc.*, No. 11 C 8987, No. 12 C 9431, 2019 WL 2450492, at *9 (N.D. June 12, 2019) (finding Aspect dialing system to be an ATDS because it "responds to the customer service agent's availability and begins dialing numbers from the list based on a programmed algorithm").

Finally, although Plaintiff prevailed on certain issues raised by the Trustees in their motions for judgment on the pleadings and for summary judgment, Plaintiff recognizes the risk that the same issues could be revisited later in the case or on appeal. For example, the Court denied the Trustees' standing-based motion for judgment on the pleadings on the grounds that the Trustees had not demonstrated their entitled to judgment at that stage but explained that the issue could be addressed at the class certification stage. DE #132 at 10. In addition, while the Court denied the Trustees' motion for summary judgment, DBNTC believes that the decision was incorrectly decided and could be appealed. If DBNTC prevailed on either issue, class members might not receive any compensation.

Moreover, this case involves over 300,000 class members and millions of calls, resulting in large statutory damages. Some courts view awards of aggregate, statutory damages with skepticism and reduce such awards on due process grounds. For example, in *Golan v. FreeEat.com*, the Eighth Circuit affirmed a district court's decision to reduce a jury's award of $500 per call in a TCPA case to $10 per call. 930 F.3d 950, 958, 962-63 (8th Cir. 2019). In *Golan*, the total damages amounted to $1.6 billion, which the Eighth Circuit found violated the Due Process Clause. *Id.* at 962 ("To state the obvious, $1.6 billion is a shockingly large amount."). District courts in this circuit have come to the same conclusion. *See, e.g., Aliano v. Joe Caputo & Sons-Algonquin, Inc.*, No. 09 C 910, 2011 WL 1706061, at *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful

FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights ….  Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."). Even if this Court permitted the maximum amount, DBNTC would almost certainly appeal and fight paying the judgment, further delaying or limiting any ultimate relief to the class.

Under the settlement, Settlement Class Members avoid all of those risks and obstacles to recovery. The settlement provides substantial monetary relief to Settlement Class Members without delay, and it is an excellent result for the Settlement Class.

    4.    <u>The settlement benefits will be fairly distributed to Settlement Class Members.</u>

The settlement structure mirrors structures approved as fair and reasonable in other TCPA cases in this district. *See, e.g., Wright v. Nationstar Mtg LLC*, No. 14 C 10457, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 28, 2016) (approving TCPA settlement where each claimant received a pro rata share of the settlement fund); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483 (N.D. Ill. Nov. 23, 2015) (same); *Wilkins v. HSBC Bank Nevada, N.A.*, No. 14 C 190, 2015 WL 890566, at * 3 (N.D. Ill. Feb. 27, 2015) (same). The Settlement Agreement affords all Settlement Class members the opportunity to make a claim for monetary relief and each Settlement Class member will receive the same pro rata share. Any Settlement Class member who believes the cash payments do not adequately compensate him or her for the number of calls received has the opportunity to opt out and pursue individual relief.

The parties request that this Court approve a second distribution of any unclaimed amounts remaining in the Settlement Fund 180 days after issuance of the checks if sufficient funds exist to make it feasible to make a second payment. Settlement Agreement § 4.1.5. No funds will revert to Defendant. *Id.* The parties further request that any unclaimed funds

remaining after the second distribution be disbursed to an appropriate consumer advocacy organization. *See* 4 William B. Rubenstein, Newberg on Class Actions § 12:28 (5th ed.) (observing that unclaimed funds commonly are distributed to a "charity whose goals are consistent with the underlying cause of action"). Plaintiff respectfully requests that this Court designate Public Justice to receive any funds remaining in the funds after the second distribution. Public Justice goals are consistent with this case because its mission is to pursue "high impact lawsuits to combat social and economic injustice, protect the Earth's sustainability, and challenge predatory corporate conduct and government abuses." *See* publicjustice.net.

     5.    <u>Plaintiff's counsel will request approval of a reasonable fee and expenses.</u>

     Plaintiff's counsel intend to request an award of up to $847,130 to compensate them for the work performed on behalf of the Settlement Class and up to $15,000 to reimburse them for out-of-pocket expenses they have incurred in prosecuting this action. The Seventh Circuit has explained that a fee is presumptively reasonable if the fees to counsel do not "exceed a third or at most a half of the total" recovery in the case. *Redman v. RadioShack Corp.*, 768 F.3d 622, 631 (7th Cir. 2014). The "ratio that is relevant … is the ratio of (1) the fee to (2) the fee plus what the class members received." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014) (explaining that the). Settlement Class Members here stand to receive $1,389,511 ($2,541,390 Settlement Fund - $847,130 attorneys' fees - $15,000 costs - $10,000 incentive award - $279,749 cost of administration). Based on the ratio set forth in *Pearson* and *Redman*—fees to fees plus the value to class members—the request for fees is within the acceptable range of fee awards in the Seventh Circuit. Therefore, the requested fee is presumptively reasonable under *Pearson* and *Redman*.

Plaintiff's counsel will file a fee petition explaining in detail why the requested fee reflects the market rate for legal services in this Circuit, *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 957 (7th Cir. 2013) (citations omitted), and why the requested fee is in line with attorney's fees awards in similar class action settlement. *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (applying a sliding fee scale in TCPA class action settlements). Plaintiff's counsel will file her fee petition sixty days before the deadline to object to the settlement so that Settlement Class Members will have ample opportunity to respond.

6.      The requested incentive award is reasonable.

Incentive awards for class representatives like that requested here are appropriate. Such awards, which serve as premiums in addition to any claims-based recovery from the settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits. *See Manual for Complex Litigation* § 21.62, n. 971 (incentive awards may be "merited for time spent meeting with class members, monitoring cases, or responding to discovery").

Here, Plaintiff requests an incentive award of $10,000. Plaintiff worked with counsel to investigate the case, engaged in discovery, was kept abreast of the proceedings through litigation and settlement, and reviewed and approved the proposed settlement. The amount requested here is less than awards approved by federal courts in Illinois, and should, respectfully, be approved. *See, e.g., Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 service award to plaintiff); *Heekin v. Anthem, Inc.*, No. 1:05-01908, 2012 WL 5878032, *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 service award to lead class plaintiff over objection); *Will v. Gen. Dynamics Corp.*, Civil No. 06-698-GPM, 2010 WL 4818174, *4 (S.D. Ill. Nov. 22, 2010) (awarding $25,000 each to three named plaintiffs).

7. <u>The reaction of Settlement Class Members to the proposed settlement</u>.

Settlement Class Members have not yet been notified of the proposed settlement or had an opportunity to react to it. Plaintiff will address this factor in her motion for final approval of the settlement.

**C.    The Notice Plan complies with Rule 23 and due process.**

Rule 23(e)(1) requires this Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1). To comply with due process, notice must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem*, 521 U.S at 617. Under Rule 23(c)(2)(B) "notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." The notice must state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The Settlement Agreement calls for a robust notice plan that includes direct mail or email notice to Settlement Class Members who can be identified from the records of the Ocwen or the settlement administrator. The postcard notice, Email Notice, and Long Form Notice, attached to the Settlement Agreement as Exhibits A-C, are drafted in plain English so they will be easy to understand. They include key information about the settlement, including the deadline to request exclusion or object to the settlement, and the date of the Final Approval Hearing (and that the hearing date may change without further notice). The notices state the amount of the maximum

amount of fees Plaintiff's counsel will request, the amount of the incentive award Plaintiff will request, and provide an estimate of the monetary benefit Settlement Class Members will receive if they do not request exclusion. The notices disclose that, by participating in the settlement, Settlement Class Members give up the right to sue DBNTC for any legal claims that may arise from or relate to the facts and events that are the subject of the action. The notices direct Settlement Class Members to the settlement website for further information, where copies of the notices, the claims form, the Settlement Agreement, the Complaint, and motions and orders relating to the Settlement will be posted. Settlement Agreement §§ 2.4, 6.3. The notices also provide contact information for the settlement administrator to answer questions.

Settlement Class Members will have ninety (90) days from the date notice is sent to file claims, opt out of the Settlement Class, or to submit objections. *Id*. §§ 2.12.3, 2.12.4, 2.12.5.

**D.     The schedule for final approval.**

The next steps in the settlement approval process are to schedule a final approval hearing, notify Settlement Class members of the settlement and final approval hearing, and provide Settlement Class members with the opportunity to exclude themselves from, or object to, settlement. The parties propose the following schedule for final approval of the settlement:

| DEADLINE | EVENT |
|---|---|
| Forty-five days after entry of this Order | Notice Deadline |
| Thirty days after Notice Deadline | Fee and Incentive Motion Deadline |
| Ninety days after Notice Deadline | Objection/Exclusion/Claims Deadline |
| 100 days after Notice Deadline | Final Approval Motion Deadline |
| Final Approval Hearing | At this Court's convenience |

## IV. CONCLUSION

Plaintiff respectfully requests that this Court take the following initial steps in the settlement approval process: (1) provisionally certify the Settlement Class; (2) grant preliminary approval of the settlement; (3) approve the proposed notice plan; (4) appoint P&N Consulting to serve as the settlement administrator; and (5) schedule the final approval hearing and related dates.

RESPECTFULLY SUBMITTED AND DATED this 26th day of November, 2019.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
    Beth E. Terrell, *Admitted Pro Hac Vice*
    Email: bterrell@terrellmarshall.com
    Adrienne D. McEntee, *Admitted Pro Hac Vice*
    Email: amcentee@terrellmarshall.com
    936 North 34th Street, Suite 300
    Seattle, Washington 98103
    Telephone: (206) 816-6603
    Facsimile: (206) 319-5450

    Alexander H. Burke, #6281095
    Email: aburke@burkelawllc.com
    Daniel J. Marovitch, #6303897
    Email: dmarovitch@burkelawllc.com
    BURKE LAW OFFICES, LLC
    155 North Michigan Avenue, Suite 9020
    Chicago, Illinois 60601
    Telephone: (312) 729-5288
    Facsimile: (312) 729-5289

Mark L. Heaney
Email: mark@heaneylaw.com
HEANEY LAW FIRM, LLC
601 Carlson Parkway, Suite 1050
Minnetonka, Minnesota 55305
Telephone: (952) 933-9655

*Attorneys for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I, Beth E. Terrell, hereby certify that on November 26, 2019, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

such filing to the following:

Kenneth Michael Kliebard
Email: kenneth.kliebard@morganlewis.com
William James Kraus
Email: william.kraus@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, Illinois 60601-5094
Telephone: (312) 324-1000
Facsimile: (312) 324-1001

Michael S. Kraut
Email: michael.kraut@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

*Attorneys for Defendant Deutsche Bank National Trust Company*

Kelsey L. Kingsbery
Email:  kelsey.kingsbery@alston.com
Frank A. Hirsch, Jr., *Admitted Pro Hac Vice*
Email:  frank.hirsch@alston.com
Sarah R. Cansler, *Admitted Pro Hac Vice*
Email: sarah.cansler@alston.com
ALSTON & BIRD LLP
4721 Emperor Boulevard, Suite 400
Durham, North Carolina 27703
Telephone: (919) 862-2200
Facsimile: (919) 862-2260

Terance A. Gonsalves
Email: terance.gonsalves@alston.com
David B. Carpenter, *Admitted Pro Hac Vice*
Email: david.carpenter@alston.com
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, Georgia 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

Anna-Katrina S. Christakis
Email:  kchristakis@pilgrimchristakis.com
Jennifer L. Majewski
Email:  jmajewski@pilgrimchristakis.com
PILGRIM CHRISTAKIS LLP
321 North Clark Street, 26th Floor
Chicago, Illinois 60654
Telephone: (312) 939-0920

*Attorneys for Defendant Wilmington Trust, N.A.*

Mark Ankcorn, #1159690
Email: mark@ankcornlaw.com
ANKCORN LAW FIRM, PLLC
1060 Woodcock Road, Suite 128
Orlando, Florida 32803
Telephone: (321) 422-2333

Local Office:

200 West Madison Street, Suite 2143
Chicago, Illinois 60606

Guillermo Cabrera
Email:  gil@cabrerafirm.com
THE CABRERA FIRM, APC
600 West Broadway, Suite 700
San Diego, California 92101
Telephone: (619) 500-4880
Facsimile: (619) 785-3380

*Attorneys for Plaintiffs*

DATED this 26th day of November, 2019.

TERRELL MARSHALL LAW GROUP PLLC


By: /s/ Beth E. Terrell, *Admitted Pro Hac Vice*

Beth E. Terrell, *Admitted Pro Hac Vice*
Email: bterrell@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

*Attorneys for Plaintiff*